No. 24-2763

# United States Court of Appeals for the Eighth Circuit

Ronald Young,

          Plaintiff – Appellant,

vs.

Eric Keyes, et al.,

          Defendants – Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION
HONORABLE DANIEL M. TRAYNOR
UNITED STATES DISTRICT COURT JUDGE

**APPELLANT'S ADDENDUM**

| | |
|---|---|
| Eric A. Rice | Dane DeKrey |
| Law Office of Eric A. Rice, LLC | Ringstrom DeKrey PLLP |
| 1 West Water Street, Suite 275 | 814 Center Avenue, Suite 5 |
| St. Paul, MN 55107 | Moorhead, MN 56560 |
| 651-998-9660 | 218-284-0484 |
| | |
| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLANT |

# TABLE OF CONTENTS

                                                          <u>Page</u>

Dkt. 17 - Order Granting Motion to Dismiss ............................................................. 1

Dkt. 18 - Judgment in a Civil Case ........................................................................ 12

Dkkt. 19 - Notice of Appeal ................................................................................... 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ronald Edward Young,<br><br>                                  Plaintiff,<br><br>vs.<br><br>Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer,<br><br>                                  Defendants. | Case No. 1:23-cv-00174 |

## ORDER GRANTING MOTION TO DISMISS

### INTRODUCTION

[¶1]    THIS MATTER comes before the Court upon a Motion to Dismiss filed by the Defendants on December 5, 2023. Doc. No. 7. Plaintiff Ronald Edward Young ("Young") filed a Response on December 26, 2023. Doc. No. 13. Defendants filed a Reply on January 12, 2024. Doc. No. 16. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

### BACKGROUND

[¶2]    This case involves a traffic stop conducted by two Williston police officers on December 31, 2019, in Williston, North Dakota. Doc. No. 1.[1] The traffic stop was conducted by Officers Eric Keyes ("Officer Keyes") and Nick Rintamaki ("Officer Rintamaki") of the Williston Police Department. Id.

---

[1] Young does not challenge the traffic stop itself or that the officers had probable cause to arrest him. He only challenges the officers' use of force in effectuating his arrest.

[¶3]   The Defendants ask the Court to consider dash camera and body camera footage from the incident. See Doc. No. 10. The Court is generally precluded from considering matters outside the pleadings on a motion to dismiss under Rule 12(b)(6). See Fed.R.Civ.P. 12(d). However, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. Mills v. City of Grand Forks, 614 F.3d 495, 497-98 (8th Cir. 2010). Here, Young does not dispute the authenticity or completeness of the videos, but he also relies on the videos in support of his respective allegations and arguments against Defendants' motion. Therefore, the Court finds Defendants' Exhibits 1 and 2 are embraced by the pleadings and considers them for purposes of the motion. See Ching v. City of Minneapolis, 73 F.4th 617, 621 (8th Cir. 2023) (stating videos of an incident are necessarily embraced by the pleadings and can be properly considered); Jackson v. Brooklyn Center, No. 21-cv-2072, 2023 WL 2368032, at *4-6 (D. Minn. Mar. 6, 2023) (in granting defendants' motion for judgment on the pleadings, the court considered recordings from officer body worn cameras and squad car dashboard cameras as evidence embraced by the pleadings).

[¶4]   On December 31, 2019, at approximately 10:00 p.m., Officer Keyes activated his emergency lights and stopped Young due to observing an alleged improper turning movement by Young. Doc. No. 1. During the stop, Officer Keyes observed indicia of alcohol intoxication. Id. Young admitted to having a "couple beers" and Officer Keyes informed him that he could smell alcohol on him, his speech was slurred, his eyes were glossy and watery, and he could smell alcohol in Young's vehicle. Doc. No. 10-2 at 6:40-6:55. Officers Keyes and Rintamaki conducted field sobriety and other related tests to determine Young's level of sobriety. Doc. No. 1.

[¶5]   After Officers Keyes and Rintamaki conducted the roadside sobriety tests, Officer Keyes informs Young they are going to skip the one leg stand test and move to the next test. Doc. No.

10-2 at 15:02. Young stands up from leaning against his car and responds with "oh Jesus Christ what test?" Id. 15:00-15:03. Young again asks Officer Keyes "what test?" Id. at 15:11. Officer Keyes tells him he will let him know in one second. Id. at 15:13. Young then turns his back to Officer Keyes and then turns back around towards Officer Keyes and says, "you all need to chill the fuck out." Id. at 15:20. Officer Keyes responds "no you need to learn how to listen. Okay?" Id. at 15:21-15:23. Young responds, "listen?" Id. Officer Keyes states "yes. I have told you to stop the test many times." Id. at 15:26. Young continues to interrupt Officer Keyes to ask him "how old are you?" Id. at 15:26. Officer Keyes responds "that is – there is no relevance to that. Okay? So, listen to me because I am going to read you something, okay?" Id. 15:28-15:34. Again, Young attempts to interrupt the officer to ask him how old he is. Id. at 15:34.

[¶6]    Officer Keyes then reads North Dakota's implied consent law to Young and asks whether he consents to taking the screening test. Id. at 15:37-15:56. Young did not immediately respond, therefore, Officer Keyes asks him "yes or no?" Id. at 15:58. Young does not answer Officer Keyes' question and instead proceeds to argue with Officer Keyes about already completing the screening tests. Id. at 16:02. Officer Keyes clarifies he is requesting a screening test with an alcohol sensor and that the other tests were not screening tests, prompting Young to ask whether he passed the other tests. Id. at 16:02-16:15. Officer Keyes again asks Young whether he consents to the screening test by asking twice "yes or no?" Id. at 16:17. Young responds "Wait. I did not pass that test?" Id. at 16:19. Officer Keyes informs Young the previous test was not a pass or fail. Id. at 16:23. Young then states "wait" and continues to argue about the previous test. Id. at 16:26. Officer Keyes then responds "Ronald, I am done arguing with you." Id. at 16:27. Young steps toward Officer Keyes while saying "no." Id. at 16:27. Officer Keyes grabs Young's arms and can be heard saying "sounds good." Id. at 16:28.

[¶7] In his Complaint, Young alleges Officer Keyes, without warning, forcefully grabbed Young's arm and commanded Young to put his hands behind his back. Doc. No. 1. Young claims Officer Rintamaki grabbed him from the other side and both officers threw him to the ground. Id. Young asserts Defendants put their weight on his back and continued to control him and put his arms into a painful position. Id. As a result of Defendants' use of force, Young claims his glasses were broken and he sustained lacerations on his face and chin. Id.

[¶8] On September 13, 2023, Young filed the instant Complaint against Officers Keyes and Rintamaki alleging a 42 U.S.C. § 1983 claim for excessive force in violation of the Fourth Amendment of the United States Constitution. Doc. No. 1 at 4.

## DISCUSSION

### I.   Motion to Dismiss Standard

[¶9] Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may file a motion to dismiss asserting the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[¶10] The Court must accept a complaint's factual allegations as true, but it does not need to accept a complaint's legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint does not "suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" Id.  However, the determination of whether a complaint states a claim upon which relief can be granted is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling him to relief.  Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013).

## II.     Qualified Immunity Standard

[¶11]   Section 1983, Title 42 U.S.C., provides a cause of action against government officials who deprive other persons of "rights, privileges, or immunities secured by the Constitution." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007) (quoting 42 U.S.C. § 1983). However, government officials are entitled to dismissal of such actions under the doctrine of qualified immunity "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hassan v. City of Minneapolis, 489 F.3d 914, 919 (8th Cir. 2007). Qualified immunity is not just a defense to liability; it constitutes immunity from suit. Hayek, 488 F.3d at 1054. At the motion to dismiss stage, defendants must show they are entitled to qualified immunity on the face of the complaint. Elder v. Gillespie, 54 F.4th 1055, 1063 (8th Cir. 2022); Baude v. Leyshock, 23 F.4th 1065, 1071 (8th Cir. 2022); Dadd v. Anoka County, 827 F.3d 749, 754 (8th Cir. 2016).

[¶12]   Courts apply a two-part analysis to determine whether an official is entitled to qualified immunity. Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006). The threshold inquiry is "whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right." Ngo v. Storlie, 495 F.3d 597, 602 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If the officer has violated a constitutional right, the court must then determine "whether the right was clearly established at the

- 5 -

Add. 5

time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008) (quoting Vaughn v. Greene Cty., 438 F.3d 845, 850 (8th Cir. 2006)). The second step of the analysis is fact-intensive and "must be undertaken in light of the specific context of the case, not as a broad general proposition." Samuelson, 455 F.3d at 875 (quoting Littrell v. Franklin, 388 F.3d 578, 583 (8th Cir. 2004)). If no constitutional violation occurred, the evaluation ends there. See Fagnan v. City of Lino Lakes, 745 F.3d 318, 322 (8th Cir. 2014).

### III. Excessive Force

[¶13] The Complaint alleges the Defendants engaged in excessive force when placing Young under arrest. Doc. No. 1. The Defendants argue the Complaint fails to state a claim for excessive force. Defendants also contend the officers' use of force in arresting Young was objectively reasonable under the circumstances and does not rise to a Constitutional violation. The Court agrees with the Defendants.

[¶14] It is well established claims of excessive force related to arrests are analyzed under the Fourth Amendment's objective reasonableness standard. See Hassan, 489 F.3d at 919; Ngo, 495 F.3d at 602 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The relevant inquiry is whether the amount of force used was objectively reasonable under the particular facts and circumstances of the case, without regard to the underlying intent or motivation of the officers. Graham, 490 U.S. at 388; Hayek, 488 F.3d at 1054; Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006).

[¶15] In assessing the reasonableness of an officer's conduct, courts must carefully examine the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Samuelson, 455 F.3d at 875 (quoting Graham, 490

U.S. at 396); see also Ngo, 495 F.3d at 602. The degree of injury suffered, to the extent "it tends to show the amount and type of force used," is also relevant to the excessive force inquiry. Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008) (quoting Graham, 490 U.S. at 396-97). "Whether an officer's use of force is reasonable is 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Moore, 514 F.3d at 762 (quoting McCoy v. City of Monticello, 342 F.3d 842, 848 (8th Cir. 2003)).

[¶16]   "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Robinson v. Hawkins, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effectuate a lawful seizure. Chambers, 641 F.3d at 907. "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minimis use of force." Robinson, 937 F.3d at 1136.

  A. **De Minimis Use of Force**

[¶17]   Officer Keyes spent approximately sixteen minutes attempting to conduct a DUI investigation of Young. During the field sobriety tests, Young was argumentative and repeatedly failed to listen to Office Keyes' instructions when taking the tests. Officer Keyes tried to initiate the screening test and Young refused to answer yes or no to taking the test. Instead, Young

- 7 -

repeatedly asked whether he failed the previous test.² Officer Keyes told Young twice that the previous test was not pass or fail, yet Young refused to answer Officer Keyes' request to take the screening test. Ultimately Officer Keyes tells Young he was done arguing with him. Young steps toward Officer Keyes while saying "No." Officer Keyes grabs Young's arms to arrest him followed by Officer Rintamaki assisting by grabbing Young's other arm. Young also does not allege any injuries resulted from being "forcefully grabbed" by the officers. See Doc. No. 1; see also Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015) (finding officer's use of force was not excessive if the suspect does not allege injuries from the officer's acts). As Officer Keyes attempted to handcuff Young, Young kept moving his arms, causing Officer Keyes to repeatedly tell him to put his hands behind his back. Officers Keyes and Rintamaki then threw Young to the ground to effectuate his arrest. When on the ground, Young continued to move and kick his legs at the officers.

[¶18]   Based on these facts, the Court finds that the force used was de minimis and is insufficient to support a claim for excessive force. See Ehlers, 846 F.3d at 1011 (holding that officer did not use excessive force when he executed a takedown on a suspect after the officer twice ordered the suspect to place his hands behind his back but the suspect continued walking away); Cavataio v. City of Bella Villa, 570 F.3d 1015, 1017, 1020 (8th Cir. 2009) (finding that an officer used de minimis force when he kneed the non-resistant, handcuffed, 75-year-old arrestee while placing him in a patrol car).

---

² Young urges the Court to consider his subjective intent and knowledge at the time of his arrest. He argues he continued to asked questions about the previous tests because he was confused. However, an arrestee's subjective motive "does not bear on how reasonable officers would have interpreted his behavior." Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017).

### B. Objective Reasonableness

[¶19]   Even if the officers' use of force was greater than de minimis, the Court finds the force utilized was reasonable under these circumstances.

[¶20]   In determining whether the force used in a particular case was reasonable, courts must carefully examine the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Samuelson, 455 F.3d at 875 (quoting Graham, 490 U.S. at 396).

[¶21]   While the crime at issue is a driving offense, the Eighth Circuit has emphasized that driving while intoxicated puts the safety of officers and others at risk. Schoettle v. Jefferson Cty., 788 F.3d 855, 860 (8th Cir. 2015) ("We have previously cognized the severity of the suspected crime at issue—driving while intoxicated—and the immediate threat that impaired drivers pose to the safety of officers and others."). Additionally, the dashcam video shows the arrest took place on the shoulder of a dark highway, while several cars drove by, putting both Young and the officer at risk. Even though Young did not physically threaten the officers, he was argumentative and told them they "need[ed] to chill the fuck out." Doc. No. 10-2 at 15:20. Young refused to listen to basic commands and instructions throughout the encounter. When attempting to arrest Young, Officer Keyes had to repeatedly tell him to put his hands behind his back. A reasonable officer on scene could have believed that Young was not complaint or at least passively resisting arrest. The nature and sequence of these events support the conclusion that officers used the amount of force necessary to effectuate Young's arrest. See Wertish v. Krueger, 433 F.3d 1062, 1066-67 (8th Cir. 2006) (passive resistance can reasonably require "somewhat more force" to effectuate an arrest); Kelsay v. Ernst, 933 F.3d 975, 981 (8th Cir. 2019) (explaining officers may apply force to regain

control of a situation and maintain law and order); Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (finding use of force was reasonable where suspect engaged in active resistance by refusing officer commands).

[¶22]   Young relies on Montoya v. City of Flandreau, 669 F.3d 867 (8th Cir. 2012) to argue the Defendants' use of force in this case was unreasonable because he was a nonviolent misdemeanant who had not threatened anyone with violence. In Montoya, officers responded to a call to a home where a man and woman were arguing. 669 F.3d at 869. The woman "raised her right hand in a fist and took a step forward toward [the man]." Id. at 870. One of the officers grabbed the woman's left arm, put it behind her back, and handcuffed her left wrist and the second officer attempted to get the woman's right arm behind her. Id. at 869. The first officer then performed a leg sweep so that she fell to the ground. Id. The woman broke her leg in the fall. Id. at 870. The Eighth Circuit Court of Appeals held that the officer's takedown of the plaintiff was not objectively reasonable under the circumstances. Id. at 871. While the court considered the fact that plaintiff's conduct only amounted to a misdemeanor in determining whether the force was reasonable, the court also relied heavily on the fact that the arrest resulted in a broken leg, finding that while the degree of injury was not dispositive, it was a relevant factor. Id. at 871-72.

[¶23]   Here, even though Young's conduct was minor and would not justify significant force, the force used was not more than necessary to effectuate his arrest. See Chambers, 641 F.3d at 907 (stating police officers have a right to use some degree of physical force to effect a lawful arrest). Young's identified injuries associated with the alleged excessive force are far different from the broken leg that the plaintiff suffered in Montoya. 669 F.3d at 872; Wertish, 433 F.3d at 1067 (concluding that "relatively minor scrapes and bruises" and "less-than-permanent aggravation of a prior shoulder condition" were *de minimis* injuries). While the degree of injury is not a dispositive

factor, it "is certainly relevant insofar as it tends to show the amount and type of force used." Chambers, 641 F.3d at 906. Thus, Young's alleged injuries, lacerations on his face and chin, tend to show the amount and type of force used here was reasonable and not more than necessary to effectuate his arrest.

[¶24]   Accepting all of Young's allegation as true but viewing the arrest and the use of force from the vantage point of the arresting officers, the Court finds the Defendants' actions were objectively reasonable under the circumstances and do not rise to a constitutional violation. Because the Court finds that the facts alleged, viewed in the light most favorable to Young, do not establish a constitutional violation, the Court does not proceed with the remainder of the qualified immunity analysis. Accordingly, the Defendants' Motion to Dismiss for failure to state a claim is **GRANTED**.

## CONCLUSION

[¶25]   For the reasons set forth above, the Defendants' Motion to Dismiss is **GRANTED**. The Complaint is **DISMISSED with prejudice**.

[¶26]   **IT IS SO ORDERED**.

DATED July 31, 2024.

Daniel M. Traynor, District Judge
United States District Court

Local AO 450 (rev. 1/23)

# United States District Court
### *District of North Dakota*

Ronald Edward Young,

      Plaintiff,

v.

Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer,

      Defendants.

JUDGMENT IN A CIVIL CASE

Case No.   1:23-cv-174

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

☑ **Decision on Motion**. This action came before the Court on motion. The issues have been considered and a decision rendered.

☐ **Stipulation**. This action came before the court on motion of the parties. The issues have been resolved.

☐ **Dismissal**. This action was voluntarily dismissed by Plaintiff pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

**IT IS ORDERED AND ADJUDGED:**

Pursuant to the Order dated July 31, 2024, the Defendants' Motion to Dismiss is GRANTED. The Complaint is DISMISSED with prejudice.

Date: July 31, 2024

KARI M. KNUDSON, CLERK OF COURT

by: */s/ Janelle Brunner, Deputy Clerk*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Ronald Edward Young,<br><br>         Plaintiff,<br><br>v.<br><br>Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer,<br><br>         Defendants. | Case No. 1:23-cv-174<br><br>**NOTICE OF APPEAL** |

  Plaintiff Ronald Young hereby appeals to the United States Court of Appeals for the Eighth Circuit from the district court's order dated July 31, 2024, in which it granted Defendants Eric Keyes and Nick Rintamaki's Motion to Dismiss, Dkt. 17, the district court's Final Judgment, Dkt. 18, and all other interlocutory orders and rulings that preceded the final judgment.

August 29, 2024          **PLAINTIFF'S COUNSEL**

                */s/ Dane DeKrey*

                **Dane DeKrey (#09524)**
                Ringstrom DeKrey PLLP
                814 Center Avenue, Suite 5
                Moorhead, MN  56560-0853
                dane@ringstromdekrey.com

Eric A. Rice (admitted *pro hac vice*)
**LAW OFFICE OF ERIC A. RICE, LLC**
1 W. Water St., Ste. 275
St. Paul, MN 55107
P: (651) 998-9660
F: (651) 344-0763
eric@ricedefense.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2024, I electronically filed the foregoing **NOTICE OF APPEAL** the Court using the CM/ECF system, which caused a true and correct copy of the same to be delivered to parties registered to the Court's CM/ECF system.

/s/ *Dane DeKrey*
Dane DeKrey
Counsel for Ronald Young

# CERTIFICATE OF SERVICE

I certify that on December 9, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses using Symantec Antivirus Corporate Edition, and that the scan showed the electronic version of the above addendum is virus-free.

/s/ Dane DeKrey
Dane DeKrey
Attorney for Ronald Young