# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

**Ronald Young**

*Plaintiff – Appellant,*

**vs.**

**Eric Keyes, et al.**

*Defendants – Appellees.*

Appeal from the U.S. District Court for the District of North Dakota
Case No. 1:23-cv-00174-DMT-CRH
The Honorable Judge Daniel M. Traynor, District Judge

## BRIEF OF DEFENDANTS-APPELLEES ERIC KEYES AND NICK RINTAMAKI

Randall J. Bakke (#03898)
Bradley N. Wiederholt (#06354)
Grant T. Bakke (#09106)
BAKKE GRINOLDS WIEDERHOLT
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
rbakke@bgwattorneys.com
bwiederholt@bgwattorneys.com
gbakke@bgwattorneys.com

*Attorneys for Appellees*

## SUMMARY OF THE CASE

Ronald Young appeals from the dismissal of his claim against Williston, North Dakota, police officers Eric Keyes and Nick Rintamaki (collectively the "Officers") for alleged violations of his rights under the Fourth Amendment to the United States Constitution. Young alleges he suffered injuries when the Officers detained him during a DUI traffic stop. The district court correctly determined that Young failed to plead facts to show the Officers' actions during the traffic stop were not objectively reasonable under the circumstances and that he did not establish a plausible violation of his constitutional rights. Young's Section 1983 claim further fails due to the absence of any alleged conduct of the Officers beyond mere negligence. As the Officers did not violate Young's constitutional rights under clearly established law at the time of the events at issue, they are also entitled to qualified immunity from Young's claim.

The Officers request 20 minutes for oral argument.

# TABLE OF CONTENTS

Summary of the Case ................................................. ii

Table of Contents .................................................. iii

Table of Authorities ...............................................v

Statement of Issues – Apposite Cases........................................1

Response to Young's Statement of the Case ............................2

    I.    Nature of the Case ...................................2

    II.   Young's Complaint Allegations ..............................2

    III.  The District Court's Order Granting the Officers' Motion to Dismiss......6

Summary of the Argument........................................9

Argument........................................................9

    I.    Standard of Review ..................................9

    II.   The Officers had Probable Cause to Arrest Young.................12

    III.  The District Court Correctly Dismissed Young's Excessive Force Claim..

        ............................................16

        A.    The Officers Did Not Violate Young's Fourth Amendment Rights..
            ...........................................16

            1.    The Force the Officers Used was Objectively Reasonable .17

                i.    Severity of the Crime at Issue.......................19

ii.    Young Posed an Immediate Threat to His Own Safety, the Safety of the Officers, and the Safety of Others ....19

iii.   Young was Resisting Arrest at the Time the Officers' Used Reasonable, De Minimis Force Against Him.....22

2.    Young's Complaint Allegations Fail to Set Out a Claim under 42 U.S.C. § 1983.......................................................31

B.    The Officers are Entitled to Qualified Immunity...........................32

1.    The Officers' Use of Force did Not Violate Young's Constitutional Rights ...........................................................34

2.    Even if the Officers Use of Force Violated Young's Constitutional Rights, such Rights were Not Clearly Established ....................................................................34

Conclusion ...............................................................................................41

# TABLE OF AUTHORITIES

## CASES

*Ansley v. Heinrich*, 925 F.2d 1339 (11th Cir. 1991) ...............................................32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................11

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013)...............16

*Bahl v. Cty. of Ramsey*, 695 F.3d 778 (8th Cir. 2012)......................................28, 29

*Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022) ..................................................33

*Bauer v. Norris*, 713 F.2d 408 (8th Cir. 1983) ...........................................37, 38, 39

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)............................................11

*Boude v. City of Raymore*, 855 F.3d 930 (8th Cir. 2017) ...........................11, 12, 24

*Brown v. City of Bloomington*, 280 F. Supp. 2d 889 (D. Minn. 2003)....................32

*Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009) ...............................19

*Burnikel v. Fong*, 886 F.3d 706 (8th Cir. 2018) ................................................26, 27

*Carpenter v. Gage*, 686 F.3d 644 (8th Cir. 2012) ...................................................27

*Cavataio v. City of Bella Villa*, 570 F.3d 1015 (8th Cir. 2009).........................22, 23

*Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011) .................18, 23, 28, 40, 41

*City of Devils Lake v. Grove*, 2008 ND 155, 755 N.W.2d 485 ...............................14

*City of Jamestown v. Jerome*, 2002 ND 34, 639 N.W.2d 478.................................13

*Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009)............................................10

*Cravener v. Shuster*, 885 F.3d 1135 (8th Cir. 2018) ..............................................20

*Crumley v. City of St. Paul, Mn.*, 324 F.3d 1003 (8th Cir. 2003)............................23

*Curd v. City Court*, 141 F.3d 839 (8th Cir. 1998) ...................................................28

*Dadd v. Anoka County*, 827 F.3d 749 (8th Cir. 2016).............................................33

*Daniels v. Williams*, 474 U.S. 327 (1986) ..............................................................31

*Ehlers v. City of Rapid City*, 846 F.3d 1002 (8th Cir. 2017)............................28, 29

*Elder v. Gillespie*, 54 F.4th 1055 (8th Cir. 2022) ...................................................33

*Fagnan v. City of Lino Lakes*, 745 F.3d 318 (8th Cir. 2014)...................................34

*Fischer v. Hoven*, 925 F.3d 986 (8th Cir. 2019).....................................................29

*Foster v. Cerro Gordo Cty.*, No. 14-CV-3013-CJW, 2016 WL 11641710 (N.D. Iowa May 10, 2016) .................................................................................................23, 28

*Graham v. Conner*, 490 U.S. 386 (1989)............................................13, 17, 18, 23

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) .......................................10

*Grider v. Bowling*, 785 F.3d 1248 (8th Cir. 2015) .................................................24

*Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799 (8th Cir. 1999) ............ 10

*Harlow v. Fitzgerald*, 457 U.S. 818 (1982) ...........................................................32

*Hayek v. City of St. Paul*, 488 F.3d 1049 (8th Cir. 2007)..................................32, 33

*Henderson v. Munn*, 439 F.3d 497 (8th Cir. 2006)..................................................33

*Hoover v. Director, North Dakota Dept. of Transp.*, 2008 ND 87, 748 N.W.2d 730. ................................................................................................................................13

*Hosea v. City of St. Paul*, 867 F.3d 949 (8th Cir. 2017).........................................13

*Jackson v. Stair*, 944 F.3d 704 (8th Cir. 2019)........................................................29

*Janis v. Biesheuvel*, 428 F.3d 795 (8th Cir. 2005)..................................................19

*Kahl v. Director, North Dakota Dept. of Transp.*, 1997 ND 147, 567 N.W.2d 197 ...
........................................................................................................................14

*Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) .................................................. 1, 29

*Kisela v. Hughes*, 584 U.S. 100 (2018) ..................................................................35

*Kohorst v. Smith*, 968 F.3d 871 (8th Cir. 2020)......................................1, 18, 28, 29

*Littrell v. Franklin*, 388 F.3d 578 (8th Cir. 2004) ..................................................34

*Mann v. Yarnell*, 497 F.3d 822 (8th Cir. 2007) ..........................................25, 26, 28

*Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988)......................................................23

*Maryland v. Pringle*, 540 U.S. 366 (2003) ............................................................14

*Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928 (8th Cir. 2012) .....11

*Montoya v. City of Flandreau*, 669 F.3d 867 (8th Cir. 2012)..........................40, 41

*Moran v. N. Dakota Dep't of Transp.*, 543 N.W.2d 767 (N.D. 1996)....................14

*Murphy v. Engelhart*, 933 F.3d 1027 (8th Cir. 2019)........................................1, 36

*Nance v. Sammis*, 586 F.3d 604 (8th Cir. 2009)......................................................33

*Nieters v. Holtan*, 83 F.4th 1099 (8th Cir. 2023)....................................................18

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................33

*Plemmons v. Roberts*, 439 F.3d 818 (8th Cir. 2006) ..............................................33

*Raeburn v. Gibson*, No. 20-2001, 2021 WL 3871916 (8th Cir. 2021) ..............1, 28

*Roach v. City of Fredericktown, Mo.*, 882 F.2d 294 (8th Cir. 1989) ......................31

*Robinson v. Hawkins*, 937 F.3d 1128 (8th Cir. 2019) ...............................................23

*Samuelson v. City of New Ulm*, 455 F.3d 871 (8th Cir. 2006) .........................33, 34

*Sayler v. North Dakota Dept. of Transp.*, 2007 ND 165, 740 N.W.2d 94 ..............14

*Schoettle v. Jefferson Cty.*, 788 F.3d 855 (8th Cir. 2015)........................................19

*Shannon v. Koehler*, 616 F.3d 855 (8th Cir. 2010)........................................37, 39 40

*Shelton v. Stevens*, 964 F.3d 747 (8th Cir. 2020)....................................................35

*Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)..............10

*State v. Washington*, 2007 ND 138, 737 N.W.2d 382 .............................................13

*Waters v. Madson*, 921 F.3d 725 (8th Cir. 2019) ................................10, 11, 12, 24

*Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006)....................................23, 28, 41

*Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990) ....................................10

*Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001) ....................................................20

*Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001)....................................31

*Zutz v. Nelson*, 601 F.3d 842 (8th Cir. 2010)..........................................................10

## STATUTES

42 U.S.C. § 1983 ......................................................2, 9, 17, 18, 31, 32

42 U.S.C. § 1988 ............................................................................2

N.D.C.C. § 39-08-01 ....................................................................13

N.D.C.C. § 39-10-02 ....................................................................15

N.D.C.C. § 39-10-17 ....................................................................14

N.D.C.C. § 39-20-14(1) ............................................................22

N.D.C.C. § 39-20-14(3) ............................................................22

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................6, 9, 10, 11

**OTHER**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004)............................................................11

U.S. Const. amend. IV ............................................................17

## <u>STATEMENT OF ISSUES – APPOSITE CASES</u>

I.    Whether the district court correctly dismissed Young's Fourth Amendment excessive force claim.

*Murphy v. Engelhart*, 933 F.3d 1027 (8th Cir. 2019)

*Raeburn v. Gibson*, No. 20-2001, 2021 WL 3871916 (8th Cir. 2021)

*Kohorst v. Smith*, 968 F.3d 871 (8th Cir. 2020)

*Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019)

## RESPONSE TO YOUNG'S STATEMENT OF THE CASE

The Officers disagree with Plaintiff-Appellant Ronald Edward Young's ("Young") Statement of the Case and provide the following response.

## I.    Nature of the Case

This case involves Young's allegations that the Officers used excessive force while arresting him during the late evening of December 31, 2019, for driving while under the influence of alcohol.  Young alleges the excessive force occurred when the Officers grabbed him without warning and threw him to the ground, allegedly causing his eyeglasses to break and lacerations to his face.  Young asserts a claim against the Officers for excessive force in violation of his Fourth Amendment rights under 42 U.S.C. § 1983.  Young seeks monetary damages, punitive damages, and an award of attorneys' fees under federal law, including under 42 U.S.C. § 1988.

## II.    Young's Complaint Allegations

Young's statement of the case does not accurately reflect his Complaint allegations.  The factual allegations contained in Young's Complaint provide, in their entirety:

### FACTS

6) On December 31, 2019, Young was driving in the City of Williston.

7) At approximately 10:00 p.m., Keyes was on patrol.

8) Keyes activated his emergency lights and stopped Young due to an alleged improper turning movement by Young.

9) Young stopped his vehicle, and a traffic stop was conducted by Keyes and Rintamaki.

10) During the stop, Keyes observed indicia of alcohol intoxication. Field sobriety and other DWI-related tests were conducted by Keyes and Rintamaki.

11) After the tests were completed, Young, Keyes, and Rintamaki were all standing near the rear of Young's vehicle.

12) Without warning, Keyes forcefully grabbed Young's arm.

13) After Keyes grabbed Young's arm, he then commanded Young to put his hands behind his back.

14) Rintamaki grabbed Young from the other side.

15) Both officers threw Young to the ground. Because the officers held Young's arms, Young was unable to protect himself from injury as he was thrown to the ground.

16) Young repeatedly asked officers what they were doing to him.

17) Young tried to prevent injury to himself during the encounter, but officers controlled him and prevented him from doing so.

18) The officers put their weight on Young's back once he was on the ground. Officers continued to control and put Young's arms into a painful position.

19) Due to the force used by Keyes and Rintamaki, Young's glasses were broken. Young also sustained lacerations on his face and chin.

20) Due to the use of force by the defendants, Young suffered physical pain and injury, mental trauma, and emotional damages.

(App. 2-4; R. Doc. 1, at 2-4.)

In his brief, Young attempts to expand upon and at times contradicts the foregoing factual allegations in his Complaint. For example, Young argues that he complied with the Officers' commands to stand behind his vehicle and perform eye and walking field sobriety tests after the Officers had pulled him over for the traffic stop. (Appellant's Br. at 8.)[1] But Young's Complaint is actually silent as to whether he complied with any of the Officers' commands, and in his brief he asserts he "verbally protest[ed]" when the Officers asked him to perform what he believed was a repeat field sobriety test. (App. 3; R. Doc. 1, at 3; Appellant's Br. at 8.)

The assertions in Young's brief also contradict his Complaint allegations as to what happened next. The brief asserts that in response to his verbal protestation, both Officers grabbed him by the arms and violently threw him to the ground, face-first, without first asking him to put his hands behind his back. (Appellant's Br. at 8.) But in his Complaint, Young alleged Keyes grabbed his arm and commanded him to put his hands behind his back *before* Rintamaki grabbed him from the other side and both Officers threw him to the ground. (App. 3; R. Doc. 1, at 3.) Notably absent from Young's Complaint is any allegation that he did not resist arrest or that there was a lack of probable to support the arrest. (*See* App. 2-4; R. Doc. 1, at 2-4.)

---

[1] References to page numbers of Appellant's Brief, Appendix, and Addendum refer to the ECF-generated page numbers.

In his Brief, Young also expands upon or misstates his actual allegations contained in the Complaint, as follows:

1. The Complaint does not allege the Officers "removed Young from his vehicle and required him to stand behind the vehicle on the side of the road." (Appellant's Br. at 8.)

2. The Complaint does not allege that during DWI-related testing the Officers "made no indication that they feared for their safety due to the nighttime roadside location." (Appellant's Br. at 8.)

3. The Complaint does not allege the number of field sobriety tests Young performed during the traffic stop. (Appellant's Br. at 8.)

4. The Complaint does not allege Young was "confused and frustrated" when the Officers requested that he take an additional field sobriety test. (Appellant's Br. at 8.)

5. The Complaint does not allege the Officers threw Young to the ground due to Young verbally protesting to take a field sobriety test, but is rather silent as to why Young was allegedly thrown to the ground. (App. 3; R. Doc. 1, at 3; Appellant's Br. at 8.)

6. The Complaint does not allege the Officers threw Young to the ground "violently" or "face-first." (Appellant's Br. at 8.)

7.     The Complaint does not allege that Young "had made no threatening gestures towards [the Officers], and wasn't in possession of a weapon" when the use of force occurred.  (Appellant's Br. at 8.)

8.     The Complaint does not allege that he was "merely responding to escalation by [the Officers], not being an aggressor himself" at the time he was thrown to the ground.  (Appellant's Br. at 9.)

9.     The Complaint does not allege that Young's resistance to the Officers occurred in response to the Officers' use of force. (Appellant's Br. at 9.)

10.    The Complaint does not allege the ground upon which Young was thrown was "frozen" or "snow-packed ground." (Appellant's Br. at 9.)

11.    The Complaint does not allege "Young was taken from the scene in an ambulance to receive medical attention and evaluation." (Appellant's Br. at 9.)

### III.     The District Court's Order Granting the Officers' Motion to Dismiss

The Officers moved for dismissal of Young's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As part of their motion, the Officers requested the district court to consider video of the traffic stop and of the arrest of Young recorded by Keyes patrol vehicle's dash camera and Keyes body camera.

(App. 9-10, 23;[2] Add. 2-3; LEO.App. 1;[3] R. Doc. 17, at 2-3.) Young did not object

to the district court's consideration of the videos, and the district court determined

the videos were embraced by the pleadings and considered them in deciding the

Officers' motion. (App. 9-10; Add. 2-3; R. Doc. 17, at 2-3.)

   The district court relied upon the following facts from Young's Complaint as

well as the videos in dismissing Young's claim against the Officers:

> [¶4] On December 31, 2019, at approximately 10:00 p.m., Officer
> Keyes activated his emergency lights and stopped Young due to
> observing an alleged improper turning movement by Young. Doc. No.
> 1. During the stop, Officer Keyes observed indicia of alcohol
> intoxication. Id. Young admitted to having a "couple beers" and Officer
> Keyes informed him that he could smell alcohol on him, his speech was
> slurred, his eyes were glossy and watery, and he could smell alcohol in
> Young's vehicle. Doc. No. 10-2 at 6:40-6:55. Officers Keyes and
> Rintamaki conducted field sobriety and other related tests to determine
> Young's level of sobriety. Doc. No. 1.
>
> [¶5] After Officers Keyes and Rintamaki conducted the roadside
> sobriety tests, Officer Keyes informs Young they are going to skip the
> one leg stand test and move to the next test. Doc. No. 10-2 at 15:02.
> Young stands up from leaning against his car and responds with "oh
> Jesus Christ what test?" Id. 15:00-15:03. Young again asks Officer
> Keyes "what test?" Id. at 15:11. Officer Keyes tells him he will let him

---

[2] Keyes' body camera video is electronically available as part of Appellant's
Appendix. (App. 23.) A placeholder for Keyes' body camera video was entered in
the district court's docket, but it is not electronically available on the district court's
docket. (R. Doc. 10-2.)

[3] "LEO.App." refers to the Defendants-Appellees' Appendix. Keyes' dash camera
video is electronically available as part of Defendants-Appellees' Appendix.
(LEO.App. 1.) A placeholder for Keyes' dash camera video was entered in the
district court's docket, but it is not electronically available on the district court's
docket. (R. Doc. 10-1.)

know in one second. Id. at 15:13. Young then turns his back to Officer Keyes and then turns back around towards Officer Keyes and says, "you all need to chill the fuck out." Id. at 15:20. Officer Keyes responds "no you need to learn how to listen. Okay?" Id. at 15:21-15:23. Young responds, "listen?" Id. Officer Keyes states "yes. I have told you to stop the test many times." Id. at 15:26. Young continues to interrupt Officer Keyes to ask him "how old are you?" Id. at 15:26. Officer Keyes responds "that is – there is no relevance to that. Okay? So, listen to me because I am going to read you something, okay?" Id. 15:28-15:34. Again, Young attempts to interrupt the officer to ask him how old he is. Id. at 15:34.

[¶6] Officer Keyes then reads North Dakota's implied consent law to Young and asks whether he consents to taking the screening test. Id. at 15:37-15:56. Young did not immediately respond, therefore, Officer Keyes asks him "yes or no?" Id. at 15:58. Young does not answer Officer Keyes' question and instead proceeds to argue with Officer Keyes about already completing the screening tests. Id. at 16:02. Officer Keyes clarifies he is requesting a screening test with an alcohol sensor and that the other tests were not screening tests, prompting Young to ask whether he passed the other tests. Id. at 16:02-16:15. Officer Keyes again asks Young whether he consents to the screening test by asking twice "yes or no?" Id. at 16:17. Young responds "Wait. I did not pass that test?" Id. at 16:19. Officer Keyes informs Young the previous test was not a pass or fail. Id. at 16:23. Young then states "wait" and continues to argue about the previous test. Id. at 16:26. Officer Keyes then responds "Ronald, I am done arguing with you." Id. at 16:27. Young steps toward Officer Keyes while saying "no." Id. at 16:27. Officer Keyes grabs Young's arms and can be heard saying "sounds good." Id. at 16:28.

[¶7] In his Complaint, Young alleges Officer Keyes, without warning, forcefully grabbed Young's arm and commanded Young to put his hands behind his back. Doc. No. 1. Young claims Officer Rintamaki grabbed him from the other side and both officers threw him to the ground. Id. Young asserts Defendants put their weight on his back and continued to control him and put his arms into a painful position. Id. As a result of Defendants' use of force, Young claims his glasses were broken and he sustained lacerations on his face and chin. Id.

(App. 9-11; Add. 2-4; R. Doc. 17, at 2-4.)

## SUMMARY OF THE ARGUMENT

The district court properly dismissed Young's claim against the officers. Young failed to plead a plausible excessive force claim in violation of his Fourth Amendment rights because his allegations – combined with videos of the arrest, which are embraced by the pleadings – establish the Officers' use of force against him was objectively reasonable under the circumstances alleged. In addition, Young's Section 1983 claim further fails due to the absence of any alleged conduct of the Officers beyond mere negligence. Further, the Officers are entitled to qualified immunity as existing precedent did not squarely establish that using de minimis force to apprehend a suspect actively resisting arrest under circumstances similar to those alleged by Young violated his clearly established constitutional rights.

The Officers request this Court to uphold the district court's dismissal of Young's claim against them.

## ARGUMENT

## I.     Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. The Eighth Circuit Court of Appeals

reviews de novo a grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).

In reviewing a motion to dismiss, this Court takes all facts alleged in the complaint to be true. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* (citations omitted). The Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . rather than facts that are merely consistent with such a right.'" *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft*, 556 U.S. at 679.

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004).

*Miller v. Redwood Toxicology Laboratory, Inc*., 688 F.3d 928, 931 n.3 (8th Cir. 2012). In reviewing the district court's grant of the Officers' motion to dismiss, this Court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence." *Waters*, 921 F.3d at 734 (quoting *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017)).

As to the videos considered by the district court in granting the Officers' motion to dismiss, the district court stated, ". . . Young does not dispute the authenticity or completeness of the videos, but he also relies on the videos in support of his respective allegations and arguments against Defendants' motion. Therefore, the Court finds Defendants' Exhibits 1 and 2 are embraced by the pleadings and considers them for purposes of the motion." (App. 9; Add. 2; R.

Doc. 17, at 2 (citations omitted).)  On appeal, Young does not assert that the district court's consideration of the videos was improper and in fact submitted Keyes' body camera video for this Court's consideration.  (App. 23; *see* Appellant's Br. at 11 (providing, "Video evidence may be considered and may overrule a plaintiff's allegations if it 'blatantly contradicts' them.")  (quoting *Boude*, 855 F.3d at 933).)

The dash camera video from Keyes' patrol vehicle (submitted in the Officers' appendix) shows the same events leading up to and including Young's arrest as are shown in Keyes' body camera video.  (*See generally* LEO.App. 1.)  In fact, the dash camera video shows the force used by the Officers when they arrested Young more clearly than Keyes' body camera video, as all three individuals' positions in relation to one another can more easily be observed from the dash camera video than the body camera video.  (LEO.App. 1 at 17:25.)  Both Keyes' dash camera video and body camera video are embraced by the pleadings and were properly considered by the district court in granting the Officers' motion to dismiss Young's claim.  *See Waters*, 921 F.3d at 731 n.2 (affirming dismissal of plaintiff's Fourth Amendment claims in favor of law enforcement where the district court determined dash camera video from officer's squad car was embraced by the pleadings).

## II.  The Officers had Probable Cause to Arrest Young

Videos from Officer Keyes' dash camera and body camera clearly establish

there was abundant evidence on which the Officers based their probable cause arrest[4] of Young for the crime of driving under the influence of alcohol ("DUI").[5] While Young does not claim his arrest was unsupported by probable cause, but rather claims unconstitutional excessive force was used in effectuating the arrest, the factors the Officers observed leading up to the probable cause arrest of Young are relevant under both the "reasonableness" test set out by the Supreme Court in *Graham v. O'Connor* and the totality of the circumstances test for qualified immunity, as discussed in greater detail below.

The North Dakota Supreme Court has provided the probable cause standard for a DUI arrest as follows:

> An arrest must be supported by probable cause. *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Hoover v. Director, North Dakota Dept. of Transp.*, 2008 ND 87, ¶ 9, 748 N.W.2d 730. To "determine whether an officer had probable cause to arrest an individual, [this Court examines] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Washington*, 2007 ND 138,

---

[4] As discussed in *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017), "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause."

[5] N.D.C.C. § 39-08-01 is the North Dakota statute that prohibits and prescribes a penalty for operating a motor vehicle while under the influence of any intoxicating substance, including alcoholic beverages.

¶ 12, 737 N.W.2d 382 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)). "Probable cause to arrest a driver for driving under the influence exists if the police officer (1) observes some signs of physical or mental impairment, and (2) has reason to believe the driver's impairment is caused by alcohol." *Sayler v. North Dakota Dept. of Transp.*, 2007 ND 165, ¶ 19, 740 N.W.2d 94. Detection of the odor of alcohol, observation of signs of impairment, and failure of field sobriety tests are relevant factors in determining probable cause to arrest a driver for driving under the influence of alcohol. *See Kahl v. Director, North Dakota Dept. of Transp.*, 1997 ND 147, ¶ 17, 567 N.W.2d 197.

*City of Devils Lake v. Grove*, 2008 ND 155, ¶ 11, 755 N.W.2d 485 (internal citations and quotations in original). Traffic violations and red, bloodshot eyes are two additional common factors supporting probable cause for a DUI arrest. *Moran v. N. Dakota Dep't of Transp.*, 543 N.W.2d 767 (N.D. 1996) (internal citations and quotations in original).

The Officers clearly had probable cause to arrest Young given their observations of his physical impairment and their objectively reasonable belief that the impairment was caused by alcohol. The dash camera and body camera videos confirm Officer Keyes observed that Young made an illegal left turn wherein he failed to maintain his lane of travel through the turn. (LEO.App. 1 at 00:45; App. 23 at 1:50.)[6] Young then took an unreasonably long time to pull over after Officer

---

[6] N.D.C.C. § 39-10-17 provides in part, "1. A vehicle must be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety. [. . .] 4. Official traffic-control devices may be installed prohibiting the changing of lanes on

Keyes activated his overhead lights and siren. (LEO.App. 1 at 1:25.)[7] When Young did finally pull over, he drove over to the center median to the left of the roadway rather than pulling over on the right side of the divided highway. (LEO.App. 1 at 1:50.)

Officer Keyes' body camera video establishes he informed Young that there was an odor of alcohol emanating from the car and from Young as soon as he opened the door (App. 23 at 1:20, 2:20, 6:45), which Officer Keyes again smelled as he accessed the car's glove box for Young's temporary driver's permit. (App. 23 at 3:00, 6:50.) Young admitted to drinking "not much" and later admitted to drinking a "couple beers." (App. 23 at 2:25, 6:40.) Officer Keyes also indicated that Young had slow, delayed responses, was slurring his speech, and had bloodshot and watery eyes. (App. 23 at 2:20, 6:45.) Young's delayed responses and slurred speech are directly observable throughout the entirety of Keyes' interaction with Young as shown by the body camera video. The video also shows Young reach into his coat, after which Officer Rintamaki immediately stated, "I just told you not to reach into your pocket." (App. 23 at 6:15.) The video further confirms Young

sections of roadway and drivers of vehicles shall obey the directions of every such device."

[7] N.D.C.C. § 39-10-02 provides in part, "No person may willfully refuse to comply with any lawful order or direction of any police officer or firefighter invested by law with authority to direct, control, or regulate traffic."

"hit on 6 out of 6 clues" on the Horizontal Gaze Nystagmus and that he badly failed the heel-to-toe straight line walk. (App. 23 at 9:40, 13:10.)

The above-described observations of Young's alcohol impairment confirm Officer Keyes had probable cause (or at the very least arguable probable cause) to arrest Young for DUI. Young's Complaint is silent as to whether probable cause for his arrest existed but he concedes, "Keyes observed indicia of alcohol intoxication." (App. 3; R. Doc. 1, at 3.) None of the above-described circumstances shown in Officer Keyes' dash camera or body camera videos contradict any of Young's Complaint allegations.

## III.    The District Court Correctly Dismissed Young's Excessive Force Claim

Young alleges the Officers used excessive force against him in violation of the Fourth Amendment. His Complaint and briefing place the focus of the excessive force claim on the Officers' actions of grabbing Young's arms and taking him to the ground. To state a viable claim for excessive force under the Fourth Amendment, a plaintiff must allege facts showing the officers: (1) seized him under the Fourth Amendment; (2) this seizure was objectively unreasonable; and (3) the officers are not entitled to qualified immunity. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013). There is no dispute that Young was seized by the Officers, so only the second and third factors are at issue here.

### A.    The Officers Did Not Violate Young's Fourth Amendment Rights

Young has failed to allege a plausible claim of excessive force in violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 as 1) Young's factual allegations and the videos of the incident conclusively establish the force the Officers' used against him was objectively reasonable, and 2) Young's complaint allegations fail to set out a claim under 42 U.S.C. § 1983 because at most, the Officers' use of force was only potentially negligent and not actionable under § 1983.

### 1. The Force the Officers Used was Objectively Reasonable

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. As the force at issue was applied against Young in furtherance of his arrest (*i.e.*, a seizure), the objective reasonableness standard under *Graham v. Conner*, 490 U.S. 386 (1989) applies to Young's excessive force claim under the Fourth Amendment. In *Graham*, The Supreme Court provided:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force

that is necessary in a particular situation.

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396-97 (citations and quotations omitted).

"When evaluating a Fourth Amendment excessive force claim under § 1983, [a court] consider[s] 'whether the amount of force used was objectively reasonable under the particular circumstances.'" *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (citation omitted). Courts evaluate "the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight." *Id.* The reasonableness of a use of force requires consideration of the totality of the circumstances, and the "evaluation entails careful consideration of the case's particular facts and circumstances, including: '(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989); *see also Nieters v. Holtan*, 83 F.4th 1099, 1108 (8th Cir. 2023). The degree of injury suffered, to the extent "it tends to show the amount and type of force used," is also relevant to the excessive force inquiry. *Chambers v. Pennycook*, 641 F.3d 898, 906

(8th Cir. 2011).

### i.    Severity of the Crime at Issue

In this case, the district court correctly determined that the crime of DUI, while a misdemeanor, has been determined to be a crime which puts the safety of officers and others at risk. (App. 16; Add. 9; R. Doc. 17, at 9) (quoting *Schoettle v. Jefferson Cty.*, 788 F.3d 855, 860 (8th Cir. 2015) ("We have previously cognized the severity of the suspected crime at issue—driving while intoxicated—and the immediate threat that impaired drivers pose to the safety of officers and others."); *see also Janis v. Biesheuvel*, 428 F.3d 795, 800 (8th Cir. 2005) (officers were justified in using force to remove a driver whom they believed to be impaired from his vehicle after driver refused to comply with orders to exit the vehicle). More relevant to the reasonableness analysis in this case however are the circumstances showing the immediate safety threat Young's conduct created during the DUI arrest as well as his resistance of arrest.

### ii.    Young Posed an Immediate Threat to His Own Safety, the Safety of the Officers, and the Safety of Others

Keyes' dash camera and body camera videos show that Young's conduct during the traffic stop and DUI investigation clearly posed a threat to his own safety, and the safety of the Officers and others. "[A] late night traffic stop presents certain inherent risks to an officer's safety." *Brown v. City of Golden Valley*, 574 F.3d 491, 497 n.4 (8th Cir. 2009). "A threat to an officer's safety can justify the use of force

in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee." *Id.* at 497 (citations omitted). "Unarmed, passively resisting subjects can pose a threat necessitating the use of . . . force." *Cravener v. Shuster*, 885 F.3d 1135, 1140 (8th Cir. 2018). "[O]fficers may seize a person 'in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'" *Id.* (quoting *Winters v. Adams*, 254 F.3d 758, 763 (8th Cir. 2001)).

The traffic stop at issue occurred at approximately 10:00 pm on New Year's Eve in Williston, North Dakota. (App. 2; R. Doc. 1, at 2.) The dash camera video shows that the entire incident occurred in the dark of night on the shoulder of a busy highway (on perhaps the busiest night of the year for late night traffic), during which traffic continues to pass the location of the traffic stop throughout the incident. (*See generally* LEO.App. 1.) Young pulled over on the wrong side of the highway (on the center median side rather than to the right) and the Officers' DUI investigation revealed Young was clearly intoxicated. Officer Keyes' body camera video shows that Young was continuously noncompliant with the Officers' clear, and given the circumstances reasonable, commands. (*See generally* App. 23.) Young continued to move around on the side of the roadway in an erratic manner near the back of his car while he interacted with the Officers, and reached into his coat after being instructed not to do so by Officer Rintamaki. (App. 23 at 6:15.)

In short, a reasonable officer on the scene given the circumstances presented would have reason to believe Young's conduct presented an immediate threat to the safety of Young, to the Officers, and to drivers on the highway based on Young's obvious intoxication, furtive movements, and noncompliance with the Officers' commands. All of this increased the probability of a vehicle-pedestrian accident at this particular location. A reasonable officer would have had ample reason to believe Young's erratic behavior and his refusal to comply with or listen to basic commands and instructions put Young's own life in danger so near the roadway at night, put the lives of other drivers in danger if Young were to flee on foot, and also put the Officers themselves in danger and in fear for their own safety on the side of the roadway at night.

Further, Young's increasing verbal argumentation and aggression towards the Officers would indicate to a reasonable officer that Young presented an immediate threat to the officers' safety. Throughout the traffic stop, Young's demeanor evolved from being initially compliant but somewhat confused, to not listening to or obeying the Officers, and then to showing an outright aggressive posture and attitude when he was told there would be another field sobriety test. (App. 23 at 15:00.) At that time, Young turned toward Officer Keyes in a threatening manner and clenched his fists for a brief moment before stating "You all need to chill the fuck out!" (App. 23 at 15:20.)

Young thereafter continued to argue more aggressively with Officer Keyes, and repeatedly asked Officer Keyes "How old are you?" as Officer Keyes attempted to read him North Dakota's implied consent advisory, which officers are required by state law to do prior to performing an alcohol screening test of suspected intoxicated drivers. (App. 23 at 15:25); N.D.C.C. §§ 39-20-14(1) and (3). Young refused to answer yes or no when asked to perform the alcohol screening test. (App. 23 at 15:35.) Officer Keyes' body camera video establishes that just moments before the Young was arrested, he continued to argue about the field sobriety testing. (App. 23 at 16:00.) Young then physically and verbally resisted Officer Keyes' command to put his hands behind his back as Officer Keyes grabbed his arm. (App. 23 at 16:28.)

In this tense and rapidly evolving situation, a reasonable officer would have believed Young posed a threat to the officer's safety. This is particularly true because until the time of Young's arrest, his movement during the traffic stop was unrestrained, his person had not been searched for weapons, and Young reached into his pocket despite Officer Rintamaki's command that he refrain from doing so.

### iii. Young was Resisting Arrest at the Time the Officers' Used Reasonable, De Minimis Force Against Him

In his brief, Young argues the district court erred in determining the Officers used de minimis force against him during the arrest and thus did not use excessive force. (Appellant's Br. at 13.) A de minimis use of force or injury is insufficient to support a finding of a constitutional violation. *Cavataio v. City of Bella Villa*,

570 F.3d 1015, 1020 (8th Cir. 2009); *Foster v. Cerro Gordo Cty.*, No. 14-CV-3013-CJW, 2016 WL 11641710, at *6 (N.D. Iowa May 10, 2016) (citing *Crumley v. City of St. Paul, Mn.*, 324 F.3d 1003, 1007 (8th Cir. 2003)). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure." *Chambers*, 641 F.3d at 907 (citing *Graham*, 490 U.S. at 396). This Court has held that "relatively minor scrapes and bruises and less-than-permanent aggravation of a prior shoulder condition" resulting from a seizure constituted de minimis injuries that support the conclusion that excessive force was not used. *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006); *see also Cavataio*, 570 F.3d at 1020 (finding that an officer used de minimis force when he kneed the non-resistant, handcuffed, 75-year-old arrestee while placing him in a patrol car and the only alleged injury was back pain); *Crumley*, 324 F.3d at 1008 (citing *Martin v. Gentile*, 849 F.2d 863, 869–70 (4th Cir.1988) (painful handcuffing resulting in scrapes and bruises did not constitute injury to sustain claim for constitutional violation)).

The district court correctly determined the Officers applied de minimis force against Young insufficient to support a claim for excessive force, as follows:

[¶17] Officer Keyes spent approximately sixteen minutes attempting to conduct a DUI investigation of Young. During the field sobriety tests,

Young was argumentative and repeatedly failed to listen to Office[r].]] Keyes' instructions when taking the tests. Officer Keyes tried to initiate the screening test and Young refused to answer yes or no to taking the test. Instead, Young repeatedly asked whether he failed the previous test. Officer Keyes told Young twice that the previous test was not pass or fail, yet Young refused to answer Officer Keyes' request to take the screening test. Ultimately Officer Keyes tells Young he was done arguing with him. Young steps toward Officer Keyes while saying "No." Officer Keyes grabs Young's arms to arrest him followed by Officer Rintamaki assisting by grabbing Young's other arm. Young also does not allege any injuries resulted from being "forcefully grabbed" by the officers. See Doc. No. 1; see also Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015) (finding officer's use of force was not excessive if the suspect does not allege injuries from the officer's acts). As Officer Keyes attempted to handcuff Young, Young kept moving his arms, causing Officer Keyes to repeatedly tell him to put his hands behind his back. Officers Keyes and Rintamaki then threw Young to the ground to effectuate his arrest. When on the ground, Young continued to move and kick his legs at the officers.

(App. 14-15; Add. 7-8; R. Doc. 17, at 7-8) (footnote omitted.) Young disagrees with the district court's determination and argues that there are fact issues regarding the severity of the Officers' use of force that prevent disposition of his claim at the pleadings stage. (Appellant's Br. at 14.) He argues:

At the very least, there are fact issues regarding the severity of Defendants' use of force that prevent disposition of the claim at the pleadings stage. Young has alleged that he was violently[8] thrown to the

[8] In his brief, Young attempts to augment the factual allegations in his Complaint by describing the force used by the Officers as "violent." But there is no allegation of violence anywhere in his Complaint, and the assertion that the Officers use of force was violent is blatantly contradicted by the videos. *See Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (quoting *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (the Court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence.")). The district court's assessment here

ground while his arms were restrained, which prevented him from guarding against his face striking the frozen ground. After the takedown, the officers remained on top of Young and continued to use force. Young was taken from the scene in an ambulance and received medical attention and evaluation. The use of force was enough to cause facial lacerations and break Young's glasses. While the specifics regarding Defendants' use of force are not described in detail in Young's complaint, the general allegations are supported by the video that a factfinder could use to conclude that officers used unreasonable and more than *de minimis* force against Young. At this stage, a court must resolve inferences in favor of Young and permit the claim to proceed because the video does not conclusively demonstrate that officers used no more than *de minimis* force. *See Thompson*, 894 F.3d at 999; *Raines*, 883 F.3d at 1074–75.

(Appellant's Br. at 14.)

However, the district court's assessment of the events leading up to and including Young's arrest do not contradict Young's Complaint allegations, and its accuracy is confirmed by Officer Keyes' body camera and dash camera videos, both of which provide a clear, unambiguous picture of the entire traffic stop and seizure. The audio captured by Officer Keyes' body camera is similarly clear and shows Young's increasingly hostile noncompliance with officer commands leading up to the seizure. In this case, there are no inferences left to be resolved in Young's favor as to the severity of the force used by the Officers because the videos conclusively show that the force used was de minimis.[9] No reasonable factfinder

---

is not contradicted by any well-pleaded, non-conclusory allegations in Young's Complaint.

[9] *See Mann v. Yarnell*, 497 F.3d 822, 826-27 (8th Cir. 2007) ("Although Mann contends that the video creates genuine issues of material fact directly contradicting

could determine otherwise.

Young further argues that the force used by the Officers was more than de minimis because they "threw [him] face-first onto the frozen, snow-packed ground and continued twisting his arms without any need." (Appellant's Br. at 15.) He argues that "Throwing a restrained person onto the ground can constitute force to support a Fourth Amendment claim[,]" citing *Burnikel v. Fong*, 886 F.3d 706, 712 (8th Cir. 2018). (Appellant's Br. at 15.) However, the circumstances surrounding the use of force *Burnikel* are entirely inapposite to the present case, as the holding cited by Young concerns force applied after the suspect had already been arrested and shackled. This Court reasoned in *Burnikel* that "a reasonable officer would have understood that purposefully dropping Burnikel face-first onto the concrete *after he had been subdued and handcuffed* would violate clearly established law." *Id.* at 712 (emphasis added). But Young has not alleged the Officers used any force against him after he was subdued and handcuffed. Young alleges only that the Officers used excessive force in attempting to effectuate his arrest. As conclusively established by Officer Keyes' body camera and dash camera videos—and not denied in Young's

---

the testimony of the officers, from our examination of the video we are unable to identify any portion that contradicts the officers' recitation of events. . . . Mann appears to contend that to the extent that the video is unclear, this ambiguity creates a genuine issue of material fact that must be interpreted in his favor. . . . Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact.") (citation omitted).

well-pleaded factual allegations—Young physically resisted the Officers' attempts to subdue him, unlike the plaintiff in *Burnikel*. *Id.* at 710; (App. 3, 23 at 16:28.) The severe injuries alleged in *Burnikel* similarly demonstrate its inapplicability to the circumstances here. *Burnikel*, 886 F.3d at 710-11 (alleging officers, who did not suspect plaintiff had committed a crime, pepper sprayed him then repeatedly struck him, including in the face and groin, before handcuffing him, lifting him off the ground, and dropping him face-first onto concrete causing plaintiff injuries including many cracked and broken teeth and bad bruising to his face, back, ribs, legs, and testicles). In sum, Young's well-pleaded factual allegations and the videos embraced by the pleadings conclusively establish that the force the Officers used to effectuate Young's arrest was de minimis. The same cannot be said of the circumstances at issue in *Burnikel*.

The district court also correctly determined that even if the Officers' use of force was greater than de minimis, it was still reasonable under the circumstances. (App. 16; Add. 9; R. Doc. 17, at 9.) This Court has determined that when a suspect refuses to comply with an officer's attempts to handcuff him during an arrest, even for an innocent reason, a reasonable officer may believe that the suspect is resisting the arrest, entitling the officer to use the force necessary to subdue the suspect. *See Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (reasonable officer could believe individual was resisting arrest and use force to effectuate arrest where

individual had argued with officers and thereafter did not offer his hands when ordered to do so because he allegedly could not breath); *see also Mann*, 497 F.3d at 826-27 (use of force to effectuate arrest was reasonable where suspect was resisting to some degree, had not been complying with officer's instructions, and repeatedly shouted at officer). "Handcuffing inevitably involves some use of force[.]" *Foster*, 2016 WL 11641710, at *7 (quoting *Chambers*, 641 F.3d at 907). "Seizing a person's arm and turning [his] body does not constitute an unreasonable [amount] of force." *Foster*, 2016 WL 11641710, at *7 (citing *Curd v. City Court*, 141 F.3d 839, 841 (8th Cir. 1998)). The Eighth Circuit has determined that the use of at least minimal force to effectuate an arrest is justified where the suspect had been noncompliant with officer commands and the suspect jerked away when an officer attempted to grab his arm to handcuff him. *Raeburn v. Gibson*, No. 20-2001, 2021 WL 3871916, at *4 (8th Cir. 2021).

"The failure to follow police instruction may constitute passive resistance." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (citing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)). Even if a suspect is merely passively resisting arrest, an officer may reasonably use force to effectuate the arrest. *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required."). As the situation escalates, the officer's use of corresponding force may escalate with it. *Bahl v. Cty.*

*of Ramsey*, 695 F.3d 778, 785 (8th Cir. 2012) (noting that even routine traffic stops can escalate out of control and that officers must "respond fluidly to changing situations and individuals they encounter"). This Court has held the use of force to effectuate an arrest was reasonable where an officer commanded a suspect, once, to "get back here" and the suspect ignored the command. *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019) (en banc). An officer is also entitled to use the force necessary to effect an arrest where a suspect "at least appears to be resisting."[10] *Kohorst*, 968 F.3d at 876 (quoting *Ehlers*, 846 F.3d at 1011). This Circuit has "upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement." *Kohorst*, 968 F.3d at 876 (citing *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019)).

Here, the district court determined that a reasonable officer on the scene could have believed that Young was not compliant with the Officers' commands and, at a minimum, was passively resisting arrest at the time force was applied against him

---

[10] *See also Fischer v. Hoven*, 925 F.3d 986, 989-90 (8th Cir. 2019) (deputy did not use excessive force, and was entitled to qualified immunity, by executing an arm-bar takedown against misdemeanant [disorderly conduct] to restrain and handcuff suspect who appeared to be resisting arrest, even though such resulted in suspect suffering broken bones in her hand, arm, nose, a broken tooth, and a facial cut – the arm-bar takedown is a common technique to restrain individuals); *Ehlers*, 846 F.3d at 1002 (8th Cir. 2017) (use of spin take-down to apprehend and arrest nonviolent misdemeanant did not constitute excessive force – arrestee was noncompliant with officer's commands, thereby appearing to be resisting, and officer was entitled to use force necessary to effect the arrest).

because: (1) even though Young did not physically threaten the Officers, he was argumentative and told them they "need[ed] to chill the fuck out"; (2) Young refused to listen to basic commands and instructions throughout the encounter; and (3) Keyes had to repeatedly tell Young to put his hands behind his back while making the arrest. (App. 16; Add. 9; R. Doc. 17, at 9; *see also* App. 23 at 15:20.) The district court correctly reasoned that even though Young's conduct would not justify significant force, the force used by the Officers was not more than necessary to effectuate his arrest. (App. 17; Add. 10; R. Doc. 17, at 10.)

Under the totality of the circumstances, the Officers' use of force to effectuate Young's arrest was objectively reasonable. Keyes' body camera and dash camera videos conclusively establish that Young was not compliant with the Officers' commands and became progressively more argumentative throughout the traffic stop, culminating with Young's active resistance to being placed under arrest. (*See* App. 23; LEO.App. 1.) Assuming, arguendo, that Young's resistance was merely passive, the amount of force applied against him was still objectively reasonable in light of Young's actions leading up to the Officers' use of force to arrest him. And even assuming, arguendo, Young did not resist at all, a reasonable officer could conclude Young's alleged attempt "to prevent injury to himself" by flailing his arms and body when the Officers seized him was an attempt to resist arrest. (App. 3; R. Doc. 1, at 3.) Under any of these scenarios, the Officers were entitled to use force

to arrest Young. The videos embraced by the pleadings conclusively show the force the Officers applied was the minimal amount required to effectuate Young's arrest under the circumstances due to his repeated refusal to comply with the Officers' commands and confrontational demeanor. No matter how charitably Young's Complaint allegations and the videos embraced by the pleadings are construed, the only conclusion is that the force the Officers used was objectively reasonable.

### 2. Young's Complaint Allegations Fail to Set Out a Claim under 42 U.S.C. § 1983

As an additional basis to uphold the district court's dismissal determination, Young's Complaint failed to adequately plead a prima facie claim under 42 U.S.C. § 1983. Given Young's Complaint allegations and considering the video evidence embraced by the pleadings, Young has at most pled that the Officers were negligent during the arrest (which the Officers deny is true). Although the "reasonableness" inquiry in an excessive force case is an objective one, without regard to the officer's subjective motive or intent, an excessive force claim under § 1983 cannot be supported by mere negligent or grossly negligent conduct as such conduct does not rise to the level required to be actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (a negligence claim does not support a § 1983 action); *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (same); *Roach v. City of Fredericktown, Mo.*, 882 F.2d 294, 297 (8th Cir. 1989) (officer's alleged negligence in pursuit of automobile did not rise to level of conduct which would

31

sustain a claim under § 1983 of excessive force); *Brown v. City of Bloomington*, 280 F. Supp. 2d 889, 894 (D. Minn. 2003) (a negligence claim does not support a § 1983 action); *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991) (holding that a district court did not err when it charged a jury in a Fourth Amendment excessive force case that "negligence, standing alone, is not a constitutional violation"). Under the totality of the circumstances, the force used by the Officers to arrest Young was objectively reasonable, as described above, and no reasonable jury could conclude that the force was more than negligent or grossly negligent.

Because Young failed to allege more than negligence, his claim under 42 U.S.C. § 1983 fails as a matter of law.

## B. The Officers are Entitled to Qualified Immunity

The Officers are entitled to qualified immunity from Young's excessive force claim. Section 1983, Title 42 U.S.C., provides a cause of action against government officials who deprive other persons of "rights, privileges, or immunities secured by the Constitution." *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007) (quoting 42 U.S.C. § 1983). As explained by the United States Supreme Court:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 818 . . . (1982). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." [citation omitted].

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is not just a defense to liability; it constitutes immunity from suit. *Hayek*, 488 F.3d at 1054. At the motion to dismiss stage, defendants must show they are entitled to qualified immunity on the face of the complaint. *Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022); *Baude v. Leyshock*, 23 F.4th 1065, 1071 (8th Cir. 2022); *Dadd v. Anoka County*, 827 F.3d 749, 754 (8th Cir. 2016).

Courts apply a two-part test to determine whether an official is entitled to qualified immunity:

> The test for whether an officer is entitled to qualified immunity is twofold: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009); *Henderson v. Munn*, 439 F.3d 497, 501-02 (8th Cir. 2006). If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity. *See Plemmons v. Roberts*, 439 F.3d 818, 822 (8th Cir. 2006).

*Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). The second step of the analysis is fact intensive and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Samuelson v. City of New Ulm*, 455 F.3d 871,

875 (8th Cir. 2006) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). If no constitutional violation occurred, the evaluation ends there. *See Fagnan v. City of Lino Lakes*, 745 F.3d 318, 322 (8th Cir. 2014).

### 1. The Officers' Use of Force did Not Violate Young's Constitutional Rights

The Officers are entitled to qualified immunity from Young's excessive force claim because, as discussed above, they used an objectively reasonable amount of force to arrest Young. Thus, Young has failed to allege a plausible claim that his constitutional rights were violated.

### 2. Even if the Officers Use of Force Violated Young's Constitutional Rights, such Rights were Not Clearly Established

Even assuming, arguendo, Young has adequately alleged objectively unreasonable force was used against him during the arrest, the right to be free from such force was not clearly established as of December 31, 2019, thereby establishing separate grounds for application of qualified immunity in favor of the Officers. As explained by the Supreme Court:

> Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate*. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law. This Court has repeatedly told courts . . . not to define clearly established law at a high level of generality.

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an

officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the fact of each case, and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.

. . . .

. . . Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Kisela v. Hughes*, 584 U.S. 100, 104-05 (2018) (per curiam) (citations and quotations omitted) (emphasis added).

"Even where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible—if he was 'reasonably unreasonable.'" *Shelton v. Stevens*, 964 F.3d 747, 753-54 (8th Cir. 2020) (where officer broke suspect's ankle by stomping on it when the legitimate objective was to facilitate restraint of suspect's hands while he was pinned to the ground by several other officers, held that although the use of force was unreasonable, precedent identified was insufficient to place reasonableness of action beyond debate and officer was entitled to qualified immunity). In analyzing whether the right to be free

from force was clearly established in a case with facts nearly identical to those at bar, *Murphy v. Engelhart*, this Court explained:

> Murphy denied that she assaulted [the officer] before he threw her to the ground. But it is undisputed that she disobeyed [the officer's] repeated instructions to return to his car, was uncooperative when [the officer] grabbed her and told her to turn around, and repeatedly tried to pull her arm away from his grasp. In addition, it is undisputed that Murphy had been drinking and driving erratically, and the dashcam video shows their struggle took place on the shoulder of a dark highway, while several cars drove by. In these circumstances, accepting the facts of the takedown as Murphy describes them, we cannot conclude that [the officer] violated a 'clearly established' constitutional right when he threw or shoved Murphy to the ground.

933 F.3d 1027, 1029 (8th Cir. 2019). *Murphy's* qualified immunity analysis is particularly instructive because it was decided only four months before Young's arrest at issue here.

In this case, because the district court found that under the facts alleged, taken in the light most favorable to Young, the Officers did not violate Young's constitutional rights, the court did not proceed with the second step of the qualified immunity analysis. (App. 18; Add. 11; R. Doc. 17, at 11.) Had the district court performed that analysis, this Circuit's precedent makes clear that Young had no constitutional right clearly established by December 31, 2019, that was violated by the officers by their use of force in arresting him.

Young argues it was clearly established that an officer could not use force against someone merely because they were being argumentative, citing this Court's

decisions in *Bauer v. Norris* and *Shannon v. Koehler*. (Appellant's Br. at 17.) In *Bauer*, the plaintiffs were harassed by a deputy on patrol while they were walking home from dinner. *Bauer v. Norris*, 713 F.2d 408, 410 (8th Cir. 1983). The deputy blocked their path into the house with his patrol vehicle, and then:

> A verbal confrontation between Deputy Norris and plaintiff Jim Bauer occurred during which they exchanged epithets and obscenities. Mrs. Bauer apparently attempted to convince her husband to show Deputy Norris identification, but Mr. Bauer refused to do so, apparently because of indignation at having been accosted by Deputy Norris without being given a reason. When the Bauers attempted to enter their house, Deputy Norris physically restrained Mr. Bauer and, according to Mrs. Bauer, threateningly raised a flashlight above Mr. Bauer's head, telling Bauer that he was going with him now.

> Thereafter, Deputy Norris called for assistance. Defendant Deputy England arrived and was advised by Deputy Norris of what had transpired up to that point. Defendants subsequently arrested Mr. Bauer, placing him against the hood of the patrol car and tightly handcuffing his wrists behind his back. Apparently, Mrs. Bauer complaining about her husband's arrest, approached the deputies with raised arms. She testified that each deputy grabbed one of her arms and pulled in opposite directions. Subsequently, Mrs. Bauer was arrested without resistance, and her hands were tightly handcuffed behind her back by the deputies. The Bauers were charged with misdemeanor disorderly conduct.

*Id.* at 410-11 (footnote omitted). At their criminal trial, the Bauers were acquitted of the charges on motion immediately after the state rested its case. *Id.* at 411.

The Bauers brought a civil lawsuit against Deputy Norris claiming excessive force, among other state law violations, and the jury found Deputy Norris liable for

violating the Bauers's civil rights. *Id.* at 409. In affirming the jury's verdict, this Court reasoned:

> It must be emphasized that the appellant's use of force in this case cannot be viewed in isolation, but must be considered in the context of all the circumstances leading up to the arrest and detention of the Bauers. The record contains scant, if any, evidence to suggest that a crime had been committed in the immediate vicinity where appellant Norris stopped the Bauers, or that appellant suspected the Bauers of committing any crime. Moreover, there was no evidence that at the time appellant encountered the Bauers they were engaged in any wrongful conduct. It is also relatively clear that Deputy Norris did not give the Bauers a reason as to why he was stopping them, and that based on the record, the jury could have concluded that Deputy Norris was hostile toward the Bauers from the first moment he encountered them.
>
> . . . .
>
> Finally, while there is evidence in the record that the Bauers, particularly Mr. Bauer, were argumentative, vituperative, and threatened legal action, there is virtually no evidence that either of the Bauers actually physically resisted or physically threatened either Deputy Norris or Deputy England at the time of the arrests.

*Bauer*, 713 F.2d at 412-23 (footnote omitted).

In the present case, unlike *Bauer*, the Officers had ample probable cause to suspect Young was committing a crime when he showed obvious signs of intoxication during the traffic stop, a fact which Young does not dispute and even admits as he alleges at Paragraph 10 in the Complaint, "During the stop, Officer Keyes observed indicia of alcohol intoxication." (App. 3; R. Doc. 1, at 3.) As shown by Officer Keyes' body camera video, Officer Keyes explicitly told Young why he was pulled over for a traffic violation and thereafter why he was suspected of DUI.

(App. 23 at 1:45, 6:45.) Further, Officer Keyes' body camera video conclusively shows that the Officers were not hostile with Young and in fact exhibited patience as he continually ignored and increasingly defied their commands leading up to the arrest, during which Young physically resisted the Officers' attempts to handcuff him. The tense situation in this case which ultimately necessitated the use of force was one of Young's own making, unlike the circumstances in *Bauer*.

In *Shannon v. Koehler*, 616 F.3d 855 (8th Cir. 2010), similar to *Bauer*, this Court determined it was not clear from the record whether the officer against whom the plaintiff brought excessive force claims had any reason to suspect the plaintiff had committed a crime, and for purposes of qualified immunity analysis, assumed no probable cause existed. *Id.* at 862 n.2. The plaintiff alleged that at the time of the arrest, he was not threatening anyone and not resisting, and that the takedown maneuver used by the arresting officer caused his injuries including a partially collapsed lung, multiple fractured ribs, a laceration to the head, and various contusions. *Id.* at 863. This Court held that the officer's use of force against the plaintiff was unlawful, and noted that "the excessiveness of [the officer's] use of force was apparent." *Id.* at 865.

The totality of the circumstances shows the situation in *Shannon* was nothing like the present case. Unlike in *Shannon*, the Officers here had ample probable cause to suspect Young had committed a crime. But more importantly, Young alleges only

de minimis injuries as a result of the Officers' use of force, whereas the plaintiff in

*Shannon* alleged numerous, severe injuries as a result of the seizure, which this Court

emphasized was a significant consideration in denying qualified immunity.

Young lastly cites *Montoya v. City of Flandreau* in support of his contention

that the Officers' use of force violated his clearly established constitutional rights.

(Appellant's Br. at 19); 669 F.3d 867, 871-72 (8th Cir. 2012). The district court

correctly determined that *Montoya* is inapposite to the present case in part because,

similar to *Shannon*, *Montoya* involved serious alleged injuries resulting from the use

of force:

> [¶22] Young relies on Montoya v. City of Flandreau, 669 F.3d 867 (8th
> Cir. 2012) to argue the Defendants' use of force in this case was
> unreasonable because he was a nonviolent misdemeanant who had not
> threatened anyone with violence. In Montoya, officers responded to a
> call to a home where a man and woman were arguing. 669 F.3d at 869.
> The woman "raised her right hand in a fist and took a step forward
> toward [the man]." Id. at 870. One of the officers grabbed the woman's
> left arm, put it behind her back, and handcuffed her left wrist and the
> second officer attempted to get the woman's right arm behind her. Id.
> at 869. The first officer then performed a leg sweep so that she fell to
> the ground. Id. The woman broke her leg in the fall. Id. at 870. The
> Eighth Circuit Court of Appeals held that the officer's takedown of the
> plaintiff was not objectively reasonable under the circumstances. Id. at
> 871. While the court considered the fact that plaintiff's conduct only
> amounted to a misdemeanor in determining whether the force was
> reasonable, the court also relied heavily on the fact that the arrest
> resulted in a broken leg, finding that while the degree of injury was not
> dispositive, it was a relevant factor. Id. at 871-72.
>
> [¶23] Here, even though Young's conduct was minor and would not
> justify significant force, the force used was not more than necessary to
> effectuate his arrest. See Chambers, 641 F.3d at 907 (stating police

officers have a right to use some degree of physical force to effect a lawful arrest). Young's identified injuries associated with the alleged excessive force are far different from the broken leg that the plaintiff suffered in <u>Montoya</u>. 669 F.3d at 872; <u>Wertish</u>, 433 F.3d at 1067 (concluding that "relatively minor scrapes and bruises" and "less-than-permanent aggravation of a prior shoulder condition" were *de minimis* injuries). While the degree of injury is not a dispositive factor, it "is certainly relevant insofar as it tends to show the amount and type of force used." <u>Chambers</u>, 641 F.3d at 906. Thus, Young's alleged injuries, lacerations on his face and chin, tend to show the amount and type of force used here was reasonable and not more than necessary to effectuate his arrest.

(App. 17-18; Add. 10-11; R. Doc. 17, at 10-11.) The district court is entirely correct in its above analysis distinguishing the circumstances and the holding of *Montoya* from the case at bar.

As each of the cases cited by Young in support of his assertion that the Officers violated his clearly established constitutional rights involved significantly distinguishable circumstances than the present case, including egregious and unreasonable conduct by arresting officers and more than de minimis injuries, this Court should affirm the district court's determination that the Officers are entitled to qualified immunity from Young's excessive force claim.

## **CONCLUSION**

Defendants/Appellees request the district court's dismissal of Young's claim against them be affirmed.

Dated this 29th day of January, 2025.

BAKKE GRINOLDS WIEDERHOLT

By: _/s/ Bradley N. Wiederholt_
      Randall J. Bakke (#03898)
      Bradley N. Wiederholt (#06354)
      Grant T. Bakke (#09106)
      300 West Century Avenue
      P.O. Box 4247
      Bismarck, ND 58502-4247
      (701) 751-8188
      rbakke@bgwattorneys.com
      bwiederholt @bgwattorneys.com
      gbakke@bgwattorneys.com

      Attorneys for Defendants-Appellees,
      Eric Keyes and Nick Rintamaki

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with 8th Cir. R. 28(A) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains 11,126 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Time New Roman 14 point.

3.     This brief has been scanned for viruses and the brief is virus-free.

*/s/Bradley N. Wiederholt*
Attorney for Appellees
Dated: January 24, 2025