No. 24-2763

---

# United States Court of Appeals
# for the Eighth Circuit

---

Ronald Young,

Plaintiff – Appellant,

vs.

Eric Keyes, et al.,

Defendants – Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION
HONORABLE DANIEL M. TRAYNOR
UNITED STATES DISTRICT COURT JUDGE

---

## APPELLANT'S REPLY

---

Eric A. Rice
Law Office of Eric A. Rice, LLC
1 West Water Street, Suite 275
St. Paul, MN  55107
651-998-9660

ATTORNEY FOR APPELLANT

Dane DeKrey
Ringstrom DeKrey PLLP
814 Center Avenue, Suite 5
Moorhead, MN  56560
218-284-0484

ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................... ii

Argument ................................................................................................... 1

    1)    A court must accept reasonable inferences in favor of Young that he was not resisting or posing a safety threat when Defendants used improper force ................................. 1

    2)    The allegations in Young's brief are properly based on *both* his complaint and the videos of his traffic stop and arrest .................... 5

        a) The allegations expand on the complaint ........................................ 5

        b) The allegations don't contradict the complaint ............................. 6

    3)    The cases relied upon by Defendants to justify their use of force are distinguishable .................................................................. 7

    4)    The cases Defendants claim establish they used only de minimis force are also distinguishable ............................................. 11

    5)    Young's Fourth Amendment violation was clearly established when Defendants committed it ....................................... 14

Conclusion ................................................................................................ 17

Certificate of Service ............................................................................... 18

Certificate of Compliance ........................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Scott v. Harris,*
   550 U.S. 372 (2007) ................................................................. 6

**United States Court of Appeals Cases**

*Brown v. City of Golden Valley,*
   574 F.3d 491 (8th Cir. 2009) ........................................ 7, 8, 16

*Buckley v. Hennepin Cnty.,*
   9 F.4th 757 (8th Cir. 2021) ............................................... 1, 9

*Carpenter v. Gage,*
   686 F.3d 644 (8th Cir. 2012) ............................................... 11

*Chambers v. Pennycook,*
   641 F.3d 898 (8th Cir. 2011) ............................................... 13

*Cook v. City of Bella Villa,*
   582 F.3d 840 (8th Cir. 2009) ................................................. 4

*Cravener v. Shuster,*
   885 F.3d 1135 (8th Cir. 2018) ........................................ 8, 9, 10

*Crumley v. City of St. Paul,*
   324 F.3d 1003 (8th Cir. 2003) ............................................. 11

*Fischer v. Hoeven,*
   925 F.3d 986 (8th Cir. 2019) ............................................... 11

*Jackson v. Stair,*
   944 F.3d 704 (8th Cir. 2019) ........................................... 11, 12

*Kelsay v. Ernst,*
   933 F.3d 975 (8th Cir. 2019) ............................................... 12

*Knight v. Caldwell,*
   970 F.2d 1430 (5th Cir. 1992) ............................................... 4

*Kohorst v. Smith*,
    968 F.3d 871 (8th Cir. 2020).............................................................12

*Kulkay v. Roy*,
    847 F3d. 637 (8th Cir. 2017) ................................................................5

*Mann v. Yarnell*,
    497 F.3d 822 (8th Cir. 2007) ..............................................................12

*Montoya v. City of Flandreau*,
    669 F.3d 867 (8th Cir. 2012)..............................................................16

*Murphy v. Engelhart*,
    933 F.3d 1027 (8th Cir. 2019) ................................................. 14, 15, 16

*Raeburn v. Gibson*,
    2021 WL 3871916 (8th Cir. Aug. 31, 2021)........................................12

*Raines v. Counseling Assocs., Inc.*,
    883 F.3d 1071 (8th Cir. 2018) ................................................. 1, 2, 6, 11

*Shannon v. Koehler*,
    616 F.3d 855 (8th Cir. 2010) ..............................................................16

*Taylor v. Dormire*,
    690 F.3d 898 (8th Cir. 2012)..............................................................13

*Wertish v. Krueger*,
    433 F.3d 1062 (8th Cir. 2006) ............................................................12

**United States District Court Cases**

*Arnold v. Washington County*,
    2018 U.S. Dist. LEXIS 168691 (W.D. Ark. Sep. 30, 2018) ...............2, 4

*Awaijane v. Bittell*,
    2024 WL 2214946 (D. Minn. May 16, 2024) ....................................2, 3

*Cooper v. Bowles*,
    1997 WL 361879 (N.D. Tex. June 20, 1997)....................................... 4

# ARGUMENT

## 1) A court must accept reasonable inferences in favor of Young that he was not resisting or posing a safety threat when Defendants used improper force.

On a motion to dismiss, a court must draw all reasonable inferences in favor of Young. *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021); *see also Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1074–75 (8th Cir. 2018) ("inconclusive" video evidence must be construed in plaintiff's favor). A reasonable factfinder could draw the following inferences from the complaint and videos:

- Young was merely verbally argumentative with Defendants and otherwise generally complied with their commands;

- Young didn't pose a safety threat that would justify Defendants' use of force;

- Defendants used force on Young because they were frustrated with him, not because of a perceived safety threat or need to control him;

- Young's alleged "resistance" occurred in response to Defendants' use of force, and Young's movements during his arrest were a rational response to the pain inflicted by Defendants' use of force, not an effort to resist. (Pl.'s Br. at 10–12.)

Defendants ask this Court to draw inferences in their favor, instead. These inferences include the alleged level of danger posed to Defendants and Young's alleged resistance. (Defs.' Br. at 19–26.) But the videos do not conclusively establish those inferences, and Young disputes them. (Pl.'s Br. at 10–12.) In this situation,

where videos are susceptible to multiple reasonable interpretations, the matter must go to a factfinder to resolve the dispute. *Raines*, 883 F.3d at 1075.

In *Arnold v. Washington County*, for example, the court faced a similar situation: the parties disputed what a bodycam video showed. 2018 U.S. Dist. LEXIS 168691, at *3–4 (W.D. Ark. Sep. 30, 2018). Observing that it must "constru[e] [the] facts in the light most favorable to [the plaintiff]," the court ruled the defendant wasn't entitled to summary judgment. *Id.* at *25. The court reasoned that "[r]easonable minds viewing the video may disagree as to whether or not, at the time of the tasing, [the plaintiff] was actually resisting arrest or whether [the defendant] reasonably perceived him to be resisting arrest." *Id.* at *25–26. Given that "the possibility of multiple *reasonable* interpretations of the very same video does not resolve a potential jury question," the court held that the case "beg[ged] for a jury to act as the ultimate fact finder." *Id.* at *26 (emphasis in original).

Similarly, the court in *Awaijane v. Bittell* also faced the issue of disputed bodycam footage. 2024 WL 2214946, at *2 (D. Minn. May 16, 2024). The court first noted that while it "need not accept allegations that are contradicted by 'irrefutable video evidence,' it must construe 'inconclusive' video evidence in the plaintiff's favor." *Id.* at *4 (quoting *Raines*, 883 F.3d at 1075). The court found that the bodycam videos "do not conclusively show what [the defendants] personally

observed." *Id.* Given this, "[a]t this stage," the court held that the plaintiffs were "entitled to the reasonable inferences" related to their version of events. *Id.* And since the plaintiffs "plausibly alleged" their "excessive force" claim, the court denied the defendant's dismissal attempt. *Id.* at *6.

Because the facts of Young's case are substantially similar to *Arnold* and *Awaijane*, they deserve the same treatment.[1] Here, Defendants rely on interpretations and inferences that are not conclusively shown on the video. A reasonable factfinder could disagree with those interpretations and inferences and find, instead, that Young was merely confused about being asked to take a test that he thought he had already completed. A reasonable factfinder could understand that Defendants used force on Young because they were frustrated, not because there was a valid safety threat or other legitimate law-enforcement reason to use force. These disputes should permit Young to investigate his claims and have the evidence considered by a factfinder. Defendants' motion to dismiss must not be granted based upon disputed inferences drawn in their favor.

Finally, the Court should disregard Defendants' allegation that Young failed to affirmatively plead that he "did not resist arrest or that there was probable cause

---

[1] While *Arnold* was on summary judgment posture, and Young's case is at the motion-to-dismiss stage, if conflicting interpretations of a video are enough to avoid summary judgment, they are certainly enough to prevent a motion to dismiss.

to support the arrest." (Defs.' Br. at 4, 26–27). That's because it's not a necessary element of a Section 1983 claim to specifically plead that there was no resistance, for example. *See Cooper v. Bowles*, 1997 WL 361879, at *1 (N.D. Tex. June 20, 1997) (citing *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992)) (to establish a claim for excessive force under § 1983, plaintiff must allege only "(1) an injury that (2) resulted directly and only from the use of force that was clearly excessive to the need and the excessiveness of which (3) was unreasonable").

Instead, a plaintiff should plead facts that could allow a factfinder to determine that the force used was improper. *See id.*; *Cook v. City of Bella Villa*, 582 F.3d 840, 848–49 (8th Cir. 2009) (same). Here, Young did not plead that he was resisting or that he caused a safety threat. He did not plead any facts that would have provided Defendants with justification to use force. And even if the plaintiff's lack of resistance were an essential fact, it would be a permissible inference in Young's favor given that he did not plead that he was, in fact, resisting. The video of the incident does not conclusively show resistance or other conduct that would warrant Defendants' use of force, and Young must be permitted to bring that dispute before a factfinder. *See Arnold*, 2018 U.S. Dist. LEXIS 168691 at *26. To require a plaintiff to affirmatively plead every action that they did not do and anticipate every possible justification a defendant may have would be to harken back to code-pleading

standards, something Rule 8 was meant to eliminate. *See Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era").

Because Young has set forth allegations that would allow a reasonable factfinder to find that Defendants used improper force arising from frustration, and not a law-enforcement purpose, Young must be permitted to pursue his action.

### 2) The allegations in Young's brief are properly based on *both* his complaint and the videos of his traffic stop and arrest.

#### a) The allegations expand on the complaint.

To the extent that the allegations in Young's brief expand beyond those contained in his complaint, it's permissible because they rely on the video and reasonable inferences therefrom. Young's complaint was a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, precisely what Rule 8 requires. Defendants moved to dismiss and "requested the … court to consider" videos of Young's traffic stop and arrest. (Defs.' Br. at 6.) Young didn't object to the "consideration of the videos" and the District Court "determined the videos were embraced by the pleadings." (*Id.* at 7.)

Young's brief used the videos to illustrate and expand on the factual allegations articulated in his complaint. (Pl.'s Br. at 2–4.) Young is also permitted to rely on reasonable inferences drawn in his favor arising from his complaint and the

videos. Defendants can't rely on the videos to support their disputed inferences and then complain that Young's reliance on those materials goes beyond the allegations of the complaint. (Defs.' Br. at 7.). That's hypocritical. Defendants can argue the narrow version (consideration of just the complaint) or the full version (consideration of both the complaint and the videos), but they cannot rely on the videos to support inferences drawn therefrom in their favor, yet prohibit Young from using the videos to rebut their claims.

Because every factual allegation in Young's "Statement of the Case" is supported by the videos and complaint—and certainly not "blatantly contradicted" by them—the Court must accept them as true at this stage. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Raines*, 883 F.3d at 1074–75 (8th Cir. 2018) ("inconclusive" video evidence must be construed in the plaintiff's favor).

### b) The allegations don't contradict the complaint.

Defendants are wrong that the factual allegations in Young's brief "contradict[] the … factual allegations in his Complaint." (Defs.' Br. at 4.) The alleged contradiction relates to the manner in which Young claims Defendants used excessive force in throwing him to the ground. (*Id.*) Defendants claim that Young stated in his complaint that one officer grabbed his arms first, then a second officer joined in, and finally the two together threw him to the ground. (*Id.*) But then in his

brief, Defendants claim that Young changed course, now stating that the two officers grabbed him at the same time and simultaneously threw him to the ground. (*Id.*) Respectfully, Defendants are slicing the bologna too thin. The point of the allegation is that Defendants grabbed Young "without first asking [him] to put his hands behind his back or telling him that force was about to be used." (Pl.'s Br. at 2.) The excessive force claim is not based on which officer grabbed him first, but that both grabbed him and threw him to the ground. It's a distinction without a difference and an attempt to distract by Defendants; the Court shouldn't take the bait.

### 3) The cases relied upon by Defendants to justify their use of force are distinguishable.

Defendants claim their use of force against Young was objectively reasonable because he posed a threat to their safety, his own safety, and the safety of others. (Defs.' Br. at 19–22.) To support this claim, Defendants cite to two of this Court's cases. Both are distinguishable.

First, Defendants cite *Brown v. City of Golden Valley*, 574 F.3d 491, 497, n.4 (8th Cir. 2009), for two propositions: (1) a late-night traffic stop presents certain inherent risks to an officer's safety; and (2) a threat to an officer's safety can justify the use of force in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee. (Defs.' Br. at 19–20.) What Defendants don't say, however, is that the court in *Brown* considered these factors, sided with

the plaintiff, and upheld the denial of summary judgment. *Brown*, 574 F.3d at 501. In other words, *Brown* supports Young's position that he's stated a claim.

In *Brown*, the plaintiff motorist and defendant officer provided competing accounts of what happened during a traffic stop resulting in the plaintiff's tasing and arrest. *Id.* at 493–95. The officer tried to justify his conduct by claiming the same justification that Defendants do here: that it was "reasonable" for him to use force against the plaintiff to ensure "officer safety" during a "late-night traffic stop[]" involving a "minor, nonviolent crime[]." *Id.* at 496–98. The court rejected this argument, ruling that "accepting [the plaintiff's] version of the facts as true, she posed no … threat to [the defendant]." *Id.* at 498. Given this, there was a "genuine issue of material fact as to whether [the defendant] used excessive force in violation of [the plaintiff's] constitutional rights." *Id.* The court thus affirmed the district court's denial of summary judgment. *Id.* at 501. The Court should follow *Brown*, reverse the District Court, and let Young's case proceed to discovery.

Defendants next cite *Cravener v. Shuster*, 885 F.3d 1135, 1140 (8th Cir. 2018) for two propositions: (1) unarmed, passively resisting plaintiffs can pose a threat necessitating the use of force; and (2) officers may seize a person in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity. (Defs.' Br. at 20.) While both propositions have support in caselaw, their

applicability depends on resolving disputed facts in Defendants' favor—something that's not permitted at this stage. *See Buckley*, 9 F.4th at 760. For example, to agree that a "passively resisting" individual "can pose a threat necessitating the use of force," two things must be true: (1) the individual was *actually* passively resisting; and (2) the use of force was not greater than that needed to overcome the resistance. *Cravener*, 885 F.3d at 1140. Similarly, to agree that an officer may seize an individual in order to "ensure the safety of the public and/or the individual," it must be true that the individual was *actually* a safety risk to the public and/or himself. *Id.*

Defendants claim these circumstances were present here, and the District Court wrongly agreed, but Young disputes it. And at this stage every inference must be drawn in Young's favor. *See Buckley*, 9 F.4th at 760. While it's possible for officers to use force against a passively resisting motorist, that conclusion can't be reached on this record or in this posture. *Id.* Instead, Young alleges—and the Court must accept—that he was not resisting and Defendants used far more force than was needed to overcome any alleged resistance. His claim should proceed.

Finally, the plaintiff's conduct in *Cravener* was far worse than Young's, thus justifying the officers' use of force. First, the plaintiff had schizophrenia and was known to "possibly become violent." *Cravener*, 885 F.3d at 1137. These concerns were not present with Young. Next, the plaintiff's behavior was erratic and

argumentative from the beginning of his interaction with the officers. *Id.* These factors also did not exist with Young. Finally, the plaintiff refused the officers' commands "about 20 times." *Id.* Again, this did not occur with Young. In *Cravener*, officers made multiple attempts to limit force and warned that force would be used if noncompliance continued. *Id.* Force was ultimately the only means available to overcome the plaintiff's passive resistance and arrest him. *Id.*

Here, by contrast, Defendants made no attempt to limit their force and provided no verbal commands or warnings that would have allowed Young to avoid being subjected to force. (Pl's. Br. at 2.) And that's because there was no legitimate law enforcement purpose to using force on Young. Defendants were not attempting to detain him at the time; they were conducting sobriety tests, which Young had completed up to that point. (*Id.*) Young expressed confusion, and Defendants did not need to use force to overcome Young's confusion about why he was being asked to take a test he thought he had already completed. (*Id.*) Instead, Defendants used force because they were frustrated with Young, which is not a valid purpose. For these reasons, *Cravener* does not support dismissal of Young's claim.

*      *      *

Young disputes Defendants' characterization of what happened during his traffic stop and arrest, and the videos of the incident do not conclusively support

Defendants' one-sided account. *See Raines*, 883 F.3d at 1075. Young was not resisting arrest. And Defendants were not responding to his resistance. Rather, they were using unreasonable force on Young because they were upset and annoyed by his verbal protestation. But there's no "upset and annoyed" justification under the Fourth Amendment. The District Court erred in finding that Defendants used reasonable force against Young. This Court should reverse.

### 4) The cases Defendants claim establish they used only de minimis force are also distinguishable.

Defendants also claim they used only "de minimis" force in order to overcome Young's resistance and arrest him. (Defs.' Br. at 22–31.) To support this claim, Defendants cite to several of this Court's cases. Again, each is distinguishable.

- <u>*Carpenter v. Gage.*</u> Officers used force on plaintiff only *after* he resisted arrest. 686 F.3d 644, 649–50 (8th Cir. 2012). Here, Defendants used force *before* Young ever resisted.

- <u>*Crumley v. City of St. Paul.*</u> Officers pushed and shoved plaintiff, who suffered no injuries. 324 F.3d 1003, 1008 (8th Cir. 2003). Here, Defendants threw Young to the ground hard enough to break his glasses, cut his face, and require medical treatment.

- <u>*Fischer v. Hoeven.*</u> Officers used force on plaintiff only *after* she resisted arrest. 925 F.3d 986, 989 (8th Cir. 2019). Plaintiff was also too drunk to present a "differing factual account" than the officers. *Id.* at 988. Here, Defendants used force *before* Young ever resisted, and Young presented a different factual account than Defendants.

- <u>*Jackson v. Stair.*</u> Officers used force on plaintiff because he was "aggressive and noncompliant, "ignored multiple orders," and

"even threaten[ed]" an officer. 944 F.3d 704, 711 (8th Cir. 2019). Here, Defendants used force on Young merely because he was being verbally argumentative.

- _Kelsay v. Ernst._ Officer used force on plaintiff after she tried to walk away from him and ignored his command to "get back here." 933 F.3d 975, 978 (8th Cir. 2019) (en banc). Here, Young never tried to walk away from Defendants, nor did he ignore any commands to remain on scene.

- _Kohorst v. Smith._ Officers used force on plaintiff because he was acting similarly to plaintiff in _Jackson_, where the use of force was reasonable. 968 F.3d 871, 878 (8th Cir. 2020). Here, Young was not acting as noncompliant as plaintiffs in _Jackson_ and _Kohorst_, so Defendants use of force was not reasonable.

- _Mann v. Yarnell._ Officers used force on plaintiff only _after_ he resisted arrest. Plaintiff was also too high to provide a version of events that consisted of more than "unsubstantiated speculation." 497 F.3d 822, 824 (8th Cir. 2007). Here, Defendants used force _before_ Young ever resisted, and Young was not too drunk to tell a coherent account of what happened.

- _Raeburn v. Gibson._ Officers gave plaintiff several warnings before using force to arrest him. 2021 WL 3871916, at *1 (8th Cir. Aug. 31, 2021). Here, Defendants never gave Young any warnings before grabbing him, throwing him down, and arresting him.

- _Wertish v. Krueger._ Officers used force in response to plaintiff leading them on a car chase and refusing to get out of the car once it came to a stop. 433 F.3d 1062, 1066–67 (8th Cir. 2006). The use of force also caused merely "minor scrapes and bruises." _Id._ at 1067. Here, Young didn't lead Defendants on a car chase and he was only verbally argumentative. Defendants also used enough force on Young to break his glasses, cut his face, and cause him to need medical treatment.

These cases all differ from the facts alleged by Young's complaint and corroborated (or at least not definitively disproved) by the videos of his traffic stop and arrest. So the Court shouldn't apply them to hold that Defendants (1) used only de minimis force to arrest Young, or (2) that Young's injuries weren't severe enough to state a claim for excessive force. This is for two reasons.

First, it's true that de minimis force is permissible for law enforcement action, such as arresting someone. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) ("Police undoubtedly have a right to use some degree of physical force … to effect a lawful seizure.") But here, no force was necessary to explain to Young what sobriety test he was being asked to take, or to get him to take the test. Because Defendants' force wasn't related to "effect a lawful seizure," it wasn't constitutionally protected. *Id.* Second, nominal damages are available in excessive force cases, which supports that even de minimis force can give rise to a viable claim. *See Taylor v. Dormire*, 690 F.3d 898, 900 (8th Cir. 2012) ("A nominal damages instruction is appropriate in excessive force cases where there is evidence that force, despite being excessive, did not cause a significant injury."). A plaintiff need not be severely injured to state a claim for excessive force. *Id.* The fact that Young wasn't injured as badly as some plaintiffs in the cases Defendants cite doesn't mean his claim fails.

\*      \*      \*

In sum, Young has properly stated a claim for excessive force. Defendants did not use force for a valid law enforcement reason. The Fourth Amendment does not permit officers to use force because they are frustrated that a subject is confused about a test he is being asked to take. For these reasons, and with the benefit of all inferences in his favor, Young's claim should procced.

### 5) Young's Fourth Amendment violation was clearly established when Defendants committed it.

Defendants finally argue that even if they violated Young's Fourth Amendment rights when they threw him to the ground without warning, the violation wasn't clearly established when it occurred. (Defs.' Br. at 34–41.) To support this claim, Defendants cite to *Murphy v. Engelhart*, 933 F.3d 1027 (8th Cir. 2019). But once again, *Murphy* is distinguishable.

In *Murphy*, an officer pulled over the plaintiff for erratic driving. 933 F.3d at 1028. The officer put the plaintiff in his police car "while he checked her license." *Id.* The plaintiff initially complied, but then exited the cruiser and tried to walk back to her vehicle. *Id.* The officer intervened and "instructed her at least seven times to go back and sit in his car." *Id.* The plaintiff "refused and repeatedly tried to pull her arm from" the officer's "grasp." *Id.* Given this, the officer put the plaintiff in "an arm bar," "threw" her to the ground, "and landed on top of her." *Id.* at 1028–29. The incident broke the plaintiff's knee. *Id.* at 1029.

The plaintiff sued the officer for excessive force and the district court allowed the case to proceed past summary judgment. *Id.* at 1028. This court reversed, however, and granted the officer qualified immunity. *Id.* The court held that it could not conclude that the officer "violated a 'clearly established' constitutional right when he threw or shoved [the plaintiff] to the ground" because there was not a "robust consensus of cases" that placed this type of excessive force "beyond debate" at the time of the officer's alleged violation. *Id.* at 1029–30 (cleaned up).

Defendants claim the holding of *Murphy* applies here. (Defs.' Br. at 35–36.) And it might if Young's facts were similar enough to the facts of *Murphy*. But they're not. *Murphy* involved a plaintiff that was "actively resisting arrest" much more than Young. *Murphy*, 933 F.3d at 1029. The plaintiff in *Murphy* got out of a police car after being put inside of it, ignored seven commands to get back inside the cruiser, and repeatedly pulled her arm away from the officer's grasp. *Id.* at 1028. These behaviors are all far more active resistance than anything Young did, making the facts of *Murphy* too different for its holding to apply here.

*Murphy* was about the force an officer could use on a plaintiff who was actively resisting arrest (pulling arm away from the officer's grasp) and possibly attempting to flee (walking away from the officer, towards own car). *Id.* at 1029–30. And since there were no pre-2019 cases holding that an officer could not use force against a

suspect in that situation, the court granted the officer qualified immunity. *Id.* at 1030. But those aren't the facts here. The facts here are much closer to the right that even *Murphy* held was clearly established in 2019: "At the time of [the plaintiff's] injury, it was clearly established that an officer could not throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee." *Id.* at 1029 (cleaned up).[2]

This is exactly what Defendants did to Young the night of his traffic stop and arrest, so the right was clearly established when Defendants violated it. *See Montoya v. City of Flandreau*, 669 F.3d 867, 871–72 (8th Cir. 2012) (excessive force where disorderly conduct suspect was 10-15 feet from law enforcement and did not pose a threat); *Shannon v. Koehler*, 616 F.3d 855, 862–63 (8th Cir. 2010) (more than de minimis force amounted to excessive force against a suspect who was not suspected of a serious crime, was not threatening, and was not resisting arrest); *Brown*, 574 F.3d at 496–97 (excessive force where misdemeanor suspect "posed at most a minimal safety threat" and "was not actively resisting arrest or attempting to flee"). The second prong of the qualified immunity analysis is therefore satisfied.

---

[2] *Murphy* was published on August 14, 2019—about 4.5 months before Young's traffic stop and arrest.

## CONCLUSION

For these reasons, Ronald Young respectfully requests the Court reverse the

District Court's ruling and permit his case to proceed to discovery.


Dated: March 20, 2025                        Respectfully submitted,

                                             _____
                                             Dane DeKrey (#09524)
                                             **RINGSTROM DEKREY PLLP**
                                             814 Center Avenue, Suite 5
                                             Moorhead, MN  56560
                                             218-284-0484
                                             dane@ringstromdekrey.com

**CERTIFICATE OF SERVICE**

I certify that on March 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses using Symantec Antivirus Corporate Edition, and that the scan showed the electronic version of the above brief is virus-free.

*/s/ Dane DeKrey*
Dane DeKrey
Attorney for Ronald Young

## CERTIFICATE OF COMPLIANCE

I certify this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,071 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Equity font.

Dated: March 20, 2025

/s/ Dane DeKrey
Dane DeKrey
Attorney for Ronald Young